DEADERICK *v.* BANK.

(*Nashville.* February 18, 1897.)

1. CORPORATIONS. *Bank directors' statutory liability.*

Unless bank directors have been guilty of "fraud or willful mismanagement of the affairs" of their bank, that has caused loss to its creditors, they are not liable individually to such creditors under the statute. (*Post, pp. 458–461.*)

Code construed: § 3242 (S.); § 2507 (M. & V.); § 1829*b* (T. & S.).

2. SAME. *Bank directors' liability independent of statute.*

Bank directors are not liable individually unless made liable by statute, to the creditors of an insolvent bank, by reason of their mere neglect, without willful or fraudulent misconduct, in the management of the bank's affairs while it was a going and apparently solvent concern, whereby imprudent loans and consequent loss to the bank occurred. (*Post, pp. 461–471.*)

Cases cited and approved: Wallace *v.* Bank, 89 Tenn., 649; Parker *v.* Bethel Hotel, 96 Tenn., 278; Deaderick *v.* Wilson, 8 Bax., 114; 102 U. S., 148; 141 U. S., 132; 32 N. J. Eq., 163; 38 N. J. Eq., 509; 53 N. J. Eq., 635.

Cited and distinguished: Hume *v.* Bank, 9 Lea, 728; Minton *v.* Stahlman, 96 Tenn., 98; Shea *v.* Mabry, 1 Lea, 344.

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County. H. H. COOK, Ch.

FIRMAN SMITH and DOUGLAS WIKLE for Deaderick.

VERTREES & VERTREES, EDWARD H. EAST, and
GEO. T. HUGHES for Bank.

BEARD, J.   The defendant bank, an ordinary bank-
ing corporation, organized in 1887, in Nashville, in
this State, having become insolvent, suspended business,
and made an assignment for the benefit of its creditors,
in March, 1893.   The complainants, who were among
its depositors at the time of the suspension, filed this
bill to hold some of its directors liable for their lost
deposits.   The Chancellor rendered a decree against
the directors for $25,725.34, from which two of
them, to wit, Yarbrough and Hill, appealed.   Upon
hearing the cause, the Court of Chancery Appeals
reversed this decree, and discharged the appellants
from all liability.   The complainants now assign er-
ror on this last decree.

This is a general creditors' bill, brought by com-
plainants after a demand upon, and a refusal of, the
assignee to institute suit.   In it are many charges
of fraud, gross neglect, and willful mismanagement
upon the part of the directors, particularly in per-
mitting and sanctioning certain loans to insolvent
parties without proper security, whereby the bank
was wrecked, by reason of which, it is alleged, they
had "rendered themselves individually liable to com-
plainants," "and such other creditors as saw proper
to come in" and avail themselves of these proceed-
ings.

The loans complained of, and which formed the

basis of the Chancellor's decree, were made in 1889,
1890, and the early part of 1891, to W. M. Dun-
can (one of the organizers of this bank) individually,
and to certain firms with which he was connected,
and to parties with whom he was more or less
intimately associated in business. There is no pre-
tense in the record that the defendants, Yarbrough
and Hill, derived any advantage from these loans, or
that they were personally instrumental in securing
them for the respective borrowers. On the contrary,
it is shown that they were made by the cashier,
one C. B. Duncan, a son of W. M. Duncan.

In the progress of the cause in the Chancery
Court, there was a reference to a commissioner for
a report, among other things, of the facts surround-
ing these loans. This he accordingly made. This
"special commissioner reported, and the Chancellor
in his decree, in effect, found that the evidence failed
to show that the appellants were guilty of any fraud
or willful mismanagement of the affairs of the bank,"
and the Court of Chancery Appeals say that, "after
a careful examination of the evidence in the record,
the report of the one, and the finding of the other,
in respect to this point," they are satisfied "is cor-
rect." Continuing, that Court say: "It is manifest,
from the evidence, that, in the first years of this
bank's existence, its directory paid but little atten-
tion to its affairs. The Duncans seem to have dom-
inated. W. M. Duncan was believed to be, and
from the record was, then a man of large means,

and he was allowed free access in obtaining loans from the funds of the bank, to carry on his speculations and enterprises. While this is true, it is equally true that the other directors. in the bank believed, with great confidence, that he approached the condition financially of a ·semimillionaire, and that he was amply good for all his engagements. It appears, however, that in the larger or higher banking circles of the city, in 1891, his credit began to wane; but with his own banking people it was ''unquestioned'' until several months of 1892 had passed. Concluding on this point, the Court of Chancery Appeals say: '' We find much evidence in the record that the loans specifically reported by the special commissioner, and made the basis of the Chancellor's decree, were imprudent, and made without that care, caution, and prudence which is ordinarily supposed to govern the action of the prudent business man. But, while this is so, they again say: ''We have been unable to discover any proof which, with its fair and legitimate inferences, lead to the belief that appellants are chargeable, as directors, with fraud, or any willful mismanagement of their directory trust, in connection with the renewal or continuance of the loans.''

Upon this finding by the Court of Chancery Appeals, it is clear that in so far as complainants rest their right to recover upon the statutory liability of these directors to them, as creditors of this bank, their bill must fail. The statute on this subject is

as follows: "If any director or directors of any of the banks of this State shall be guilty of any fraud or willful mismanagement of the affairs of such bank, by which any loss shall be occasioned to its creditors, such director or directors, upon legal ascertainment of the fact, shall be individually liable for such loss, and all the stockholders assenting thereto shall be liable in like manner." Code (Shannon's), § 3242.

But it is insisted that this statute does not control this case, and that the liability of the defendant directors rests upon a principle independent of it. The position assumed by the complainants is, that the directors of a bank are liable to the corporation for losses resulting to it from their mere negligence in the performance of duties attached to their office; that upon insolvency, the right of action which has thus accrued to the bank passes as an asset to an assignee, under a general assignment for the benefit of its creditors; that if such assignee, on demand, fails or declines to bring suit to enforce this liability, then these creditors may file a bill in equity, for the use of the bank, making proper averments and parties, and recover against the delinquent directors. Is this position sound in reason or upon authority?

It is to be noted that we are not now dealing with a case where the assets of a suspended insolvent corporation have been lost to creditors by the negligence of the parties in control, nor with a case

where directors have unlawfully or fraudulently appropriated to their own use, or otherwise wrongfully diverted, the assets of the bank, but rather with one, where the only ground for recovery is that the defendant directors, in a going corporation, at a time when the record fails to show evidences of insolvency, by their failure to exercise that degree of caution in supervising the business of the bank, that is "ordinarily supposed to govern the action of the prudent business man," have made it possible for a loss to occur to the corporation through the mismanagement of an officer or officers in direct control of its daily transactions.

It is certainly true, as a general proposition, that "the agent's primary duty is to his principal. To him alone does he stand in the relation of privity and confidence. To him alone does he owe the performance of those duties which are implied from that relation, or which he has expressly assumed, and to him alone is the agent responsible for a failure to perform them. It is, therefore, the general rule that no action can be maintained by third persons against the agent to recover damages for any injury which they may have sustained by reason of the nonperformance or neglect of duty which the agent owes to his principal." Mechem on Agency, Sec. 539. This rule would certainly obtain if the complainants were creditors of an individual insolvent debtor, and were seeking a recovery against the defendants, as agents of this debtor, for some

loss resulting to their principal from their lack of ordinary prudence in the matter of their agency. Such a claim would be repelled promptly, because of the want of the privity relation. Upon what higher or better ground do complainants stand in the present suit?

A corporation "is a distinct entity. Its affairs are necessarily managed by officers and agents, it is true, but in law it is as distinct a being as an individual is, and is entitled to hold property . . . as absolutely as an individual can hold it." *Graham* v. *Railroad Co.*, 102 U. S., 148; *Deadrick* v. *Wilson*, 8 Bax., 114; *Parker* v. *Bethel Hotel Co.*, 12 Pickle, 278. And its directors are agents, in the eye of the law, not of the stockholders, but of this legal entity—the corporation. 3 Thomp. Corp., Sec. 4090. The doctrine that they are trustees has been distinctly repudiated in this State in *Wallace* v. *Lincoln Bank*, 5 Pickle, 649. In that case this Court said: "Directors are not express trustees; . . . they are mandatories; they are agents; they are trustees in the sense that every agent is a trustee for his principal, and bound to exercise diligence and good faith; they do not hold the legal title, and more often than otherwise are not the officers of the corporation having possession of the corporate property."

That directors are liable in an action at law to their principal, the corporation, for losses resulting to it from their malfeasance, misfeasance, or their failure or neglect to discharge the duties imposed by

their office, and in equity, to the stockholders, for
these losses, the corporation declining to bring suit,
is clear, upon the authorities.    Though the corpora-
tion is the legal entity, yet the stockholders are in-
terested in the operations of the corporation while
in a state of activity, and, upon its dissolution, in
the distribution of its property, after all debts are
paid; and so its officers or agents stand in à fidu-
ciary relation to both.

But it is otherwise as to creditors.    The direc-
tors of a going corporation, whether able to pay its
debts or not, owe no allegiance to them.    It is
true that the creditors may extend credit upon the
faith that the company has assets to pay its debts,
and that these assets are prudently managed, yet
they are strangers to the directors; they maintain no
fiduciary relation with them; there is a lack of
privity between the two.    As was said by the Su-
preme Court of the United States, in *Briggs* v.
*Spaulding*, 141 U. S., 132, the relation between
the creditors and the corporation "is that of con-
tract and not of trust;" but there is nothing, of
either contract or trust, in all ordinary cases, to
create any relation between the creditor and the
directors.    A creditor of a going corporation, being
thus a mere stranger, we think it clear that he can
no more, after the suspension of the corporation by
insolvency, either in law or equity, set in motion
litigation to hold its directors liable for losses attrib-
utable merely to inattention, than could the creditor

of any other insolvent debtor maintain a suit against his agent, under similar circumstances.

In such a case as the one we are dealing with— that is, loss to the corporation resulting from mere negligence on the part of its directors—a creditor seeking to hold the directors liable for this loss, even in a suit like this, must rest his claim upon some provision of positive law. Mr. Thompson, in the fourth volume, Sec. 4137, of his work on Corporations, says: "We find that it has been held that the fact that directors and officers of a corporation have mismanaged its business, does not render them liable to creditors, unless they are made liable by the provisions of the articles of incorporation, or by statute." Again, in Sec. 4138, he says: "Neither, in the absence of a special statute, are the directors of a bank liable to a general depositor for mismanaging the affairs of the bank, so that his debt is lost, for, unless they are made liable by statute, the breach of duty of which they have been guilty is to the bank, and not to the customers."

The author here is speaking of mismanagement in the sense of nonfeasance as contradistinguished from malfeasance, and, thus restricting it, we think the text announces a sound view of the law. A late case, and one in which this view is enforced with great vigor of reasoning, and after a careful examination and comparison of the authorities, is that of *Landis v. Sea Isle C. H. Co.*, N. J. Eq. (1 Am. & Eng. Corp. Cas., Anno., 208). That was a bill

16 P—30

in equity filed by a complainant who was both a
stockholder and a creditor of an insolvent corpora-
tion, to hold its directors liable for losses sustained by
their mismanagement. In the learned opinion of the
Vice Chancellor, the distinction is clearly taken be-
tween their liability to complainant in the one char-
acter and in the other. To him as a stockholder
they were held to be answerable for losses resulting
from their negligence because of the fiduciary rela-
tions existing between the two; but to him as a
mere creditor, they were held not liable for such
negligence, because there was no element of trust in
the claim, and no evidence of a diversion by them
of corporate funds for corporate purposes. In the
discussion of the two classes of cases which had
been relied upon in argument by complainant to
support his contention that there was no distinction
in principle between his claims sued for in the two
characters, attention was called by the Vice Chancel-
lor to that class of which *Ackerman* v. *Halsey*, 38
N. J. Eq., 509, was leading, in which suits had been
brought by complainants who were both creditors
and stockholders, but where reliance for recovery was
placed mainly, if not entirely, upon their rights as
stockholders, and to the savings bank cases, of which
*Stockton* v. *Bank*, 32 N. J. Eq., 163, is a represent-
ative, in which depositors were held as directors
for their negligence, as resting for their soundness
upon the fact that in such banks, organized without
stock and where the profits accrue to continuing de-

positors in the shape of dividends, the depositor "stands precisely in the position of a stockholder in an ordinary bank owned by stockholders." After a critical examination of the various authorities upon which the complainant sought to recover as a creditor, the Court concluded that "the complainant shall be confined to relief . . . as to his capital stock, and as to his debts against the company, his bill shall be dismissed." This decree of the Vice Chancellor was affirmed in 53 N. J. Eq., 635.

The complainants, however, rely upon certain cases of this Court, as well as of other Courts, as holding a contrary doctrine. These will be briefly noticed.

The case of *Farwell* v. *Great Western Tel. Co.*, 161 Ill., 522, was one where innocent stockholders brought their bill against the corporation, its receiver, other stockholders, and certain officers of the corporation, to hold liable parties to a fraudulent scheme, whereby property of the corporation was sacrificed and its proceeds were wrongfully diverted and distributed. *Fisher* v. *Andrews*, 37 Hun, 180, was a suit by the wife of a deceased member of a mutual benefit association to recover a fund assessed and collected by its managers to meet the death loss, which entitled her to it, and which it was alleged they had misappropriated, while *Chester* v. *Halliard*, 36 N. J. Eq., 313, is a case of depositors in a savings bank suing directors for losses resulting from their mismanagement. Neither of these cases support the present contention, the first being a suit of

stockholders for acts of malfeasance, and the last two being controversies arising in companies, where there were no stockholders, but where the complainants stood in a relation to the corporations similar to that of shareholders in an ordinary business corporation.

The case of *Warren* v. *Hopkins*, 111 Pa. St., 328, was an action at law brought against the directors of an insolvent bank to hold them for mismanagement, which was abated on a plea setting out the fact that there was then pending general creditors' bills in equity against the same defendants, and involving the same cause of action. In the opinion of the Court, thus disposing of the case, it is said that there was no doubt of the right of creditors to maintain such a bill in equity, but the only authorities cited for the statement were cases where · shareholders had brought such bills.

The opinion ' in the case of *Savings Bank of Louisville* v. *Caperton*, 87 Ky., 310, while containing one or two general statements which seem to support the insistence of complainants, we think cannot be relied upon by them as authority, because the conclusion of the Court 'ultimately rests upon the absence of all proof of negligence to make the directors liable to any one.

When we come to our own cases, we think they fall far short of affording authority for the present contention.

In *Hume* v. *Bank*, 9 Lea, 728, the defendants

sought to be held were neither stockholders, nor real, but merely nominal, directors of the insolvent bank, and therefore were in no respect liable for its mismanagement. In the course of the opinion, it is said: "It is difficult to see how the corporation or the stockholders could maintain an action on the facts of this case. The charter and the stock of the bank were exclusively owned by the persons . . . who misappropriated the funds. These owners and stockholders never called upon the defendants or permitted them to discharge the duties of a board of directors. Clearly neither they, nor the corporation for them, would have any right of recovery against the nominal directors. And the creditor, if he take anything by subrogation, must do so on his own merits or equities. . : . To enable the creditors to sue the defendants directly, they must have some independent right of action, either legal or equitable. Such an independent right is, as we have seen, created by statute where the director has been guilty of intentional fraud or willful mismanagement. . . . But the testimony entirely exonerates the present defendants from all participation and knowledge or even suspicion of the acts complained of." We think it apparent from this quotation, that, instead of being an authority for, it is clearly one against the theory of the present bill.

*Wallace* v. *Lincoln Savings Bank*, 89 Tenn., 630, was a bill filed by one who was a shareholder and

creditor, in which it was charged that the defendant
directors, by their inattention, negligence, and mis-
management, had reduced the bank to insolvency,
and that by reason of their breach of trust, were
liable for the loss resulting therefrom. The point
now made and relied upon by complainants, was not
raised in that case at the bar, nor considered in the
opinion of the Court; and it is evident that there
was no necessity for the Court to make any dis-
tinction between the respective rights of a shareholder
and creditor, to bring a suit to hold a director to
an account for inattention to the affairs of the cor-
poration, because it was there held that the directors
sued were not at all liable and the bill was dis-
missed. In addition, it is apparent that the right
of the complainant in that case to file his bill was
conceded largely, if not entirely, because he was a
shareholder.

Again, this question was presented to this Court
in *Minton* v. *Stahlman*, 96 Tenn., 98, and this time,
as in *Hume* v. *Bank*, *supra*, by a mere creditor.
The action, however, was at law and against the
directors for want of prudent supervision of the
affairs of the bank. It was there held, Judge Mc-
Alister delivering the opinion of the Court, that the
statute already set out "fixes a rule for determining
the individual liability of banking directors to the
creditors of the corporation, and the basis of that
liability is fraud or willful mismanagement." While
stating this statutory rule, yet the Court clearly

recognizes the well established right of creditors of an insolvent corporation to go into a Court of Equity, upon suitable averments and with necessary parties, and hold directors liable for · their delinquencies, involving loss to the creditors of the bank, as, for instance, when, as in *Shea* v. *Mabry*, 1 Lea, 344, the director has misappropriated corporate funds to improper uses.    But it is not intimated in that case that a creditor of a going corporation, who had nothing but a mere contractual relation—with no element of trust in it—with the corporation, and who was without privity with its directors or agents, should, afterwards, when it suspended operations because of insolvency, set in motion the machinery of the Courts in order to hold these agents liable for loss to their principal, resulting alone from their overconfidence in the managing officers of the bank, who had direct charge of its current transactions, when neither the principal (the corporation) nor its assignee saw proper to take such a step.    That case, and no other in our reports, is authority for such a proposition.

The decree of the Court of Chancery Appeals, dismissing the bill in this cause, is therefore affirmed.