WILLIAM WHITE & CO., INC., v. LICHTER.

Western Section. March 24, 1933.

Petition for Certiorari denied by Supreme Court, October, 1933.

Emmett W. Braden, of Memphis (Thomas · C. Farnsworth and Armstrong, McCadden & Allen, all of Memphis, of counsel), for plaintiff in error.

Chas. M. Bryan and Hanover & Hanover, all of Memphis, for defendant in error.

SENTER, J.  This is a suit by the administrator of the estate of Julia Lichter against William White & Co., a corporation doing business in the city of Memphis, as rental agents, and against the

present owners of a certain house and lot in the city of Memphis occupied by B. Lichter and his wife under a rental contract at the time plaintiff's intestate, wife of B. Lichter, received the alleged personal injuries resulting in her death.

The declaration is in two counts. The declaration in both counts aver that B. Lichter and his wife, Julia Lichter, were occupying the premises as tenants under a rental contract negotiated with William White & Co., Inc., as the rental agents of the owners of the property; that the rental agent and the owners of the property had permitted the property to become in bad repair; that a back door leading from a porch in the rear to the back steps was in a dangerous condition; and that the steps were not provided with proper guard rails. The declaration further avers that William White & Co., Inc., as the rental agent, had promised to repair the door and to put it in safe condition; that they failed to comply with the promise to repair said door and steps, and, as a result, plaintiff's intestate fell when the back door leading from the porch to the steps gave way as she was opening the same, causing her to fall down the steps, resulting in personal injuries from which she died. The declaration in the two counts avers negligence in permitting the door and steps to remain in the dangerous condition with knowledge and notice; and also avers that the rental agents, William White & Co., Inc., had specifically promised B. Lichter to repair the premises, and especially the door and steps.

All of the defendants filed pleas of not guilty and contributory negligence.

At the hearing of the cause, at the conclusion of plaintiff's proof, a motion for a directed verdict in favor of all of the defendants except the defendant William White & Co., Inc., was sustained. A motion for a directed verdict in favor of defendant William White & Co., was overruled. The trial resulted in a jury verdict in favor of plaintiff and against the defendant William White & Co., Inc., for the sum of $2,000. A motion for a new trial was made by defendant William White & Co., and, after a remittitur of $600 was suggested by the court and accepted by the plaintiff under protest, the motion for a new trial was overruled.

From the action of the court in overruling its motion for a new trial and in rendering a judgment against it in the sum of $1,400 and the costs, the defendant William White & Co. prayed and was granted an appeal in the nature of a writ of error to this court, and the appeal has been duly perfected, and errors assigned.

The first assignment of error is that there is no evidence to sustain the verdict. The second assignment presents the real contention and theory of appellant, and is as follows: "The court erred in overruling defendant's motion for peremptory instructions made at the conclusion of all the evidence. This was erroneous because:

"(a) There is no proof of any actionable negligence on the part of defendant, William White & Co., Inc.

"(b) From the uncontradicted testimony and all reasonable inferences to be drawn therefrom, plaintiff's intestate was guilty of contributory negligence as a matter of law.

"(c) This defendant was acting for a known and disclosed principal and within the scope of its authority, and any contract made by the defendant did not bind the defendant personally but was made for and on behalf of its principal.

"(d) This defendant was an agent and there was a judgment for the principal and said judgment operated to relieve the agent of any responsibility because the agent was acting within the scope of its employment for a known principal.

"(e) The defendant could not have reasonably anticipated that by reason of its failure to repair the screen door any injury would result to the tenant or to one there by the tenant's invitation, and the defendant's failure to fulfill its contract was not the proximate cause of plaintiff's intestate's injuries."

The third assignment is directed to the action of the court in admitting over the objection of the defendant certain evidence set out under the assignment, and which will later be referred to.

There is evidence in the record to support the following facts: It appears that B. Lichter rented the premises from the owner, Madison F. Embry, in about 1914, and continued to occupy the premises with his wife and family until the date of the accident. The rental was from month to month. For the past several years plaintiff in error William White & Co., Inc., had the rental of this property from the owner, and collected the rents from month to month, and made repairs when necessary, and B. Lichter had all his transactions with William White & Co., Inc. The owner of the property had died prior to this accident, and this property was a part of his estate; the heirs at law who inherited the property were nonresidents of the state, and appellant apparently had full control of renting the property, collecting the rents, making repairs, and in fact looking after and managing the property for the owner.

The premises had a small back porch, from which a screen door opened at the top of a flight of steps leading to the yard at the rear. B. Lichter discovered that the screen door referred to was in bad condition, and in August preceding the accident, which occurred on September 24, B. Lichter, when he called at the offices of appellant to pay the August rent, notified Mr. Dillon, one of the officers of William White & Co., of the defective condition of the door or screen, and made request that the same be repaired and put in safe condition. Mr. Brinkley was the general manager for the real estate and rental department of Wil-

liam White & Co., and it was the custom for Mr. Dillon to receive complaints and refer the same to Mr. Brinkley. The repairs were not made as promised in August, and, when Lichter paid the rent at the offices of appellant for September, he again called attention to the bad condition of the door, and again requested that it be promptly made, and, according to his evidence, he was assured by appellant that the repairs would be made to the door and the same put in safe condition. The rental was from month to month, and throughout the period appellant collected the rents and made repairs. The accident to plaintiff's intestate occurred on September 24 following the last promise to repair. There is no proof in the record that plaintiff's intestate, the wife of plaintiff, knew of the bad condition of the door or of any danger likely to result from its use. The condition of the door was not such as was apparent from a casual examination. There is no proof in the record that B. Lichter told his wife of the promise to repair by appellant. Lichter testified that he remained in the occupancy of the house on the strength of the promise of appellant that the repair to the door would be made. This last promise to repair, according to his evidence, was made by appellant about September 1 preceding the accident on September 24, and that he remained in the house on the strength of the promise to make the repair, and would not have remained in the house had it not been for the promise that the repairs would be made. There was evidence introduced that the screen door was in a very bad condition, some of it in a decayed condition. It was due to the bad condition of the door that plaintiff's intestate fell and sustained the injuries resulting in her death. She was eighty-two years of age, and her husband was about ten years younger. The trial court in rendering a judgment denied to B. Lichter any participation in the recovery, on the ground that he knew of the defective condition of the door.

The propositions of law submitted under the second assignment by appellant are: First. That the liability imposed upon the landlord for injuries resulting to a tenant or third parties from a failure to repair a defective condition of the premises, known to the landlord to be thus defective, is not extended to any relation other than that of landlord and tenant. In support of this proposition appellant cites and relies upon the case of Smith v. Tucker, 151 Tenn., 347, 270 S. W., 66, 41 A. L. R., 830. That case deals with the liability of a seller of property to a purchaser, and in the opinion it is held that the rule applying to landlord and tenant, or to the liability of the landlord to a tenant for defects known to the landlord which were unknown to the tenant, and not disclosed to the tenant, does not apply to a seller of real estate to a purchaser; the court holding that the rule would not be extended to any other re-

lation other than that of landlord and tenant. Obviously, that case would have no application to the present case.

Second. That a landlord's liability to a third person for failure to repair defective premises cannot rest on any terms of a contract to repair. In other words, a stranger to the contract may not recover damages for a breach thereof, and that this rule is equally applicable to the rental agent. Reliance for support of this proposition by appellant are the cases of Stenberg v. Willcox, 96 Tenn., 163, 33 S. W., 917, 34 L. R. A., 615; Willcox v. Lillie Hines, 100 Tenn., 524, 45 S. W., 781, 66 Am. St. Rep., 761; and Deadrick v. Bank, 100 Tenn., 457, 45 S. W., 786. We will refer to this proposition and the authorities mentioned in support thereof later in this opinion.

Third. That, where an agent acts on behalf of the disclosed principal, his acts and contracts within the scope of his authority are generally considered as the acts and contracts of the principal, and involve no personal liability on the part of the agent to a third person, citing Bailey v. Galbreath, 100 Tenn., 599, 47 S. W., 84, Siler v. Perkins, 126 Tenn., 380, 149 S. W., 1060, 47 L. R. A. (N. S.), 232. We do not think that these cases present the question that we now have. The Galbreath case, supra, simply holds that, when a stockholder, in making a sale of a note as agent for another, discloses the fact that his action is in the name of his principal, he is not liable to the purchaser in the absence of an express warranty of the genuineness of the note for a loss resulting from the fact that the names of the indorsers were forged.

Clearly that case was decided upon an entirely different rule, and has no application to the question we are now considering. This is also true with reference to Siler v. Perkins, supra. That was a case in which the defendant owning a part of the stock of the corporation employed the complainant to procure a purchaser to all of the stock therein without disclosing to him the other owner, other than to state that "a man in Ohio" owned some of the stock. The suit was by Siler, a licensed real estate agent, to recover compensation for services rendered for the sale of corporation stock. It is true that the court held, as set out in the second headnote, that an agent contracting for a disclosed principal does not bind himself personally, unless there is a disclosed intention so to bind himself. We do not think that case, and the rule therein announced, has any application to the question we have here.

Fourth. Where a real estate agent is not in possession or control of the leased property of the principal and has not acted affirmatively with regard thereto, such agent is not personally responsible to one properly on the premises who is injured by defects therein due to a failure to repair. In support of this proposition appellant relies upon the Tennessee case of Drake v. Hagan, 108 Tenn., 265,

67 S. W., 470; and Delaney v. Rochereau, 34 La. Ann., 1123, 44 Am. Rep., 456; Dean v. Brock, 11 Ind. App., 507, 38 N. E., 829; Minnis v. Younker Bros. (Iowa), 118 N. W., 532, and other cases cited.

However well this rule may be supported by authorities, can it be said that the rule has any application to the facts disclosed by the record in the present case? In the present case it appears that appellant for several years had had the control and renting of this property, and had made repairs on the property, and assumed control over the property. It is not even shown that Lichter knew for the past several months at lease that he was renting the property who the owner was. It is true he began renting this property about 1913 or 1914, and originally rented it from the owner, but the owner had died, and the present owners were his heirs at law and were nonresidents of the state. For six or seven years all his dealings and transactions with reference to the property were with appellant, who regularly collected the rent and was accustomed to make repairs, and who assumed to make the repairs, by promising Lichter that it would repair this door and put it in good condition. Lichter relied upon the promise. He was renting by the month, and it was a from month to month rental contract. He remained in the premises upon the first promise of appellant to make the repairs, and we think the facts bring the case within the rule and decision of the case of Ressler Leather Co. v. Ailor, 7 Tenn. App., 140, wherein the agent renting the property was held liable for a failure to carry out his promise to repair. In that case Brownlow was the rental agent of Mrs. Tyson. The contention was there made that Brownlow's failure to make the repairs which he had promised to make was a failure to perform a duty which he owed alone to Mrs. Tyson. The court said:

"It seems to us that under the facts and circumstances of this case, after Mr. Brownlow promised to repair and remedy the dangerous situation, his failure to do so when he knew that plaintiff was relying on him amounted to more than a mere failure to perform a duty owing to Mrs. Tyson. It seems to us that his promise under the circumstances should be held to have created a duty owing directly to the plaintiff, and that he cannot be heard to say that he failed to perform a duty owing only to his principal, Mrs. Tyson, and that he was guilty of only a nonfeasance for which he and his firm were not liable to plaintiff. As stated in R. C. L., the trend of modern authority is away from the doctrine of nonliability, and while the question in the cause at bar is not free from doubt, we will overrule the assignments raising the question, and hold the Brownlows liable."

Petition for certiorari was denied by the Supreme Court, without comment, and is the equivalent of an affirmance of the holding of this court on the question.

Fifth. That a tenant who, having full knowledge and appreciation of defective parts of the premises, continues to use them, cannot recover of the landlord for failure to repair, the tenant being guilty of contributory negligence as a matter of law, and that this is true, although there is a promise to repair. In support of this proposition appellant cites Willcox v. Hines, 100 Tenn., 539, 46 S. W., 297, 41 L. R. A., 278, 66 Am. St. Rep., 770; Hamilton v. Moore, 14 Tenn. App., 584; Louden v. Cline, 8 Tenn. Civ. App., 272, and an unreported opinion by this court in Hunt v. Ennis.[1]

We think a complete answer to this proposition is that, in the first place, plaintiff's intestate is not shown to have had any knowledge of the defective condition of the door. Her husband testified that he did not communicate to her the fact of the defective condition of the door. It is shown that the defect is such as would not ordinarily have been observed, and the fact that she was eighty-two years of age, although a housekeeper, would not constitute her action in failing to discover the defective condition negligent as a matter of law. It was certainly a question to be submitted to the jury under a proper instruction. This was done, and the verdict of the jury finds support in the evidence.

The fact that the husband continued to live in the premises with knowledge of the defective door was upon the express promise by appellant that the door would be repaired and made safe. This promise was made to him about September 1, and the accident occurred on September 24.

In the case of Gary v. Spitler, 10 Tenn. App., 34, the court distinguishes between cases where there was a contract to repair and those where there was not. It expressly distinguished the case of Boyd v. McCarty, 142 Tenn., 670, 222 S. W., 528, and holds:

"The last promise to repair was made in December, 1926, and she was injured on January 15, 1927. We, therefore, cannot say that she remained in the building an unreasonable length of time in reliance upon the promise. Neither can we say that the danger was so open, and apparent and glaring that she was guilty of contributory negligence as a matter of law."

In that case the court had preceded the above-quoted statement by stating:

"Now, in the cause at bar, the tenancy was from month to month and the plaintiff was not bound to remain in the premises and pay the rent. She could vacate and relieve herself of paying rent upon short notice."

It will thus be seen that in the Spitler case the promise to repair was made in December, and she was injured on January 15, the following month. In the present case the last promise to repair was made in the same month that the accident occurred.

---

[1] Not for publication. No petition for certiorari filed.

Sixth. That, where it was not within the reasonable anticipation of the defendant that a failure to act would result in the particular injury, such omission cannot be said to be the proximate cause of the alleged injury. Appellant, in support of this proposition, cites and relies upon Rogers et al. v. Chase, 5 Tenn. App., 525, and Fischer Lime & Cement Co. v. Sorce, 4 Tenn. App., 159. Neither of the cases cited have any application to a case of this character. In the Fischer Lime & Cement Company case there was an excavation below the surface of the street, and a concrete sidewalk separated the pit from the portion of the street used by vehicles, and there was a curb to the sidewalk. In addition, there was a low concrete curbing several inches high on the sidewalk adjacent to the pit. A lady who was learning to drive an automobile turned into a driveway on the opposite side of the street in an effort to turn the automobile around, and put the automobile in reverse as she started to back out, and lost control and accelerated the automobile movement in place of applying the brakes, and ran backward across the street and across the concrete sidewalk and over the low wall and fell into the pit. In that case it was held that the Fischer Lime & Cement Company could not be held liable, and that the accident and proximate cause of the injury was the result of the negligence of the driver of the automobile, and that such conduct could not have reasonably been anticipated by the defendant.

This disposes of the several propositions of law relied upon by appellant under the second assignment of error, except the second proposition. This presents the question that a landlord's liability to a third person for failure to repair defective premises cannot rest on any terms of a contract to repair, and that a stranger to a contract cannot recover damages for a breach thereof. The Willcox cases, supra, and the case of Deadrick v. Bank, 100 Tenn., 457, 45 S. W., 786, are cited and relied upon by appellant.

We do not think that the rule relied upon by appellant in support of this proposition can be applied to the case we now have. In this case, the deceased was the wife of Lichter, and it was known by defendant that she was occupying the house jointly with her husband. It was rented as a residence, a home, and to be occupied by Lichter and his wife. There being proof to sustain the verdict on the question that there was a promise made by appellant to repair this door, and its defective condition was made known by Lichter to appellant, the promise was made to repair with full knowledge of the defective condition, and, after Lichter had twice notified plaintiff in error of the defective condition, plaintiff in error failed to comply with the promise, and its failure so to do resulted in the injuries to Lichter's wife. She was not a stranger to the contract in the sense that she was a mere licensee or invitee on the premises. The agreement upon the part of Lichter to continue to

occupy the premises on the strength of the promise to repair was made as much for the benefit of his aged wife as for himself. A landlord, or one who stands in the relation of a landlord to the tenant, could reasonably anticipate that the defective door, which was a screen door, to the back porch opening on to the flight of steps, could result in just such an accident as was sustained by Lichter's wife.

In the case of DuPont Rayon Co. v. Roberson, 12 Tenn. App., 261, in commenting on this question of landlord's liability to third parties where he covenants to repair, it is said:

"Usually, the tenant only may be held liable to third persons for accidents growing out of the dangerous condition of the leased premises. But there are three exceptions: (1) Where the landlord has contracted to repair, (2) Where he lets the premises in a ruinous or dangerous condition, and (3) Where he has expressly licensed the tenant to do acts amounting to a nuisance. Woodfall's Landlord & Tenant (13 Ed.), 735; Shearman & Redfield on Negligence (6 Ed.), 709a; Stenberg v. Willcox, 96 Tenn., 163, 172, 33 S. W., 917 [34 L. R. A., 615]."

Later in the opinion the court further states:

"A landlord is liable to third parties where he covenants to repair; provided he is given notice, Willcox v. Hines, 100 Tenn., 538, 46 S. W., 297 [41 L. R. A., 278, 66 Am. St. Rep., 770]; Shearman & Redfield on Negligence (6 Ed.), sec. 708a, or has knowledge of the defects. 1 Thompson on Negligence, 1150; Elliott on Railroads (3 Ed.), secs. 1673 and 1700; 43 C. J., 1040, 1054."

In the elaborate notes to the case of Hines v. Willcox, supra, reported in 34 L. R. A., 824, there are numerous cases from other jurisdictions bearing upon this question, as well as in the case of McConnell v. Lemley, 48 La. Ann., 1433, 20 So. 887, 34 L. R. A., 609, 55 Am. St. Rep. 319. Among others is the case of Baird v. Shipman, 33 Ill. App. 503, wherein it was held that the agents of a foreign owner, having full charge of the building which they hold for rent, who lease it with a heavy door on it in a dangerous condition, at the same time promising to put it in a safe condition, will be liable to a person who goes there to deliver goods to a tenant, and who is injured by the falling of the door. In White v. Sprague, 44 Hun, 629, 9 N. Y. St. Rep., 220, it was held, if the landlord has agreed to keep the premises in repair, and after notice neglects to do so, he will be liable to an employee of the tenant, who is injured by the defect.

To the same effect is Campbell v. Portland Sugar Co., 62 Me., 552, 16 Am. Rep., 503. Numerous other authorities to the same effect from other jurisdictions could be cited in support of this rule.

We are constrained to hold that these several propositions of law presented by the second assignment of error, for the reasons above

set forth, and as contended for by appellant, cannot be sustained. It results that the second assignment of error, and also the first assignment, must be overruled.

This brings us to the third and last assignment of error. Under this assignment it is contended that the court erred in admitting the evidence of the physician over the objection of plaintiff in error, as follows:

"Q. In case of an injury, that gangrene, what does that indicate? A. It indicates tha cutting off of the circulation and not getting the proper blood supply.

"Q. What caused the gangrene, Doctor? A.

"Mr. Braden: I object.

"A. The fracture.

"The Court: Just a minute.

"Mr. Braden: I object to that, and ask that it be excluded—what caused the gangrene.

"Mr. Bryan: He said the gangrene was caused by the fracture.

"The Court: The objection is overruled.

"Mr. Braden: Note our exception on the ground that it is an issue being tried by the jury."

It is the contention of appellant that this evidence comes within the rule that witnesses are not permitted to express an opinion upon any material fact that is to be passed upon by the jury. Bruce v. Beall, 99 Tenn., 303, 41 S. W., 445, 447; Memphis Street Ry. Co. v. Hicks, 1 Tenn. Civ. App., 513.

In Bruce v. Beall, an action for personal injuries sustained by plaintiff by the fall of a freight and passenger elevator in the storehouse of defendant, the testimony admitted over objection of the defendant was as follows:

"Now, go on, Mr. Holroyd, and state whether it is prudent for an elevator to be operated with cables longer than that (that is, six or seven years) doing this kind of work.

"Answer: Well, no; I don't think it would be, for the reason that the iron, from constant daily use, crystallizes more or less, even if it don't show."

The admission by the court of this evidence was made the basis of an assignment of error, and in disposing of the assignment the court said:

"While the general rule is that witnesses must speak to facts, yet, upon questions of skill or science, men who have made the subject-matter of investigation the object of their particular study are competent to give their opinions in evidence. But they will not be permitted to state their opinion upon any point the jury are to decide. . . ."

Further on in the opinion the court further says:

"While it may be difficult often to fix the exact line between

competent and incompetent expert testimony, yet we think it clear that in no case can the witness be allowed to give an opinion upon the very issue involved. To permit this would be to substitute the opinion of the expert for that of the jury, whose duty it is to find the facts, and whose verdict is only an expression of their deductions from these facts. Such has been the holding in a great number of cases. . . ."

In the Beall case the question as to whether it was prudent to continue to use the elevator with the condition of the cables was the very issue to be tried by the jury.

The evidence objected to in that case was a clear invasion of the province of the jury. It was the very question to be determined by the jury.

In the present case there is no question with reference to the injury sustained by plaintiff's intestate. She received the injury from the fall. She sustained a broken leg. Gangrene set up in the fracture. The doctor had testified what would produce gangrene. He explained that it resulted from a disturbance of the circulatory system. He had explained in detail what would produce gangrene. He was then asked if the gangrene present in this patient was the result of the fracture to the leg. This was purely a scientific and professional opinion. It required the evidence of a competent physician, and it was not a question that was being tried by the jury. There is no contention made that she died from any other cause than from the injuries received in the fall.

We do not think that this assignment of error can be sustained, and it is accordingly overruled.

It follows that all assignments are overruled. There is one other question presented by counsel in the brief for appellant that we have not discussed. It is one of the contentions of appellant that, where the jury exonerates the principal from liability, the agent cannot be held liable. Appellant relies upon the rule that, where an agent or servant of an employer is held not liable in the same suit with the principal for the commission of a tort, the principal could not be held liable. We do not think this rule applies. The judgment of the lower court is affirmed, and appellant and sureties on the appeal bond will pay the cost of this appeal.

Heiskell and Anderson, JJ., concur.