B. F. HAWKINS v. R. I. LANE, et al.

Western Section. July 31, 1926.

No petition for Certiorari was filed.

1. **Corporations.** Party dealing with a corporation as such cannot collaterally attack its existence.

Where parties attempt to incorporate and hold themselves out as a corporation and complainant deals with them as a corporation, held he cannot collaterally attack the existence of the corporation and hold the members as partners.

2. **Corporations.** Where officers of a corporation knowingly participate in a wrong they are individually liable and may be sued jointly and severally.

In an action against the officers of a corporation to hold them individually liable for the value of the cotton converted by the corporation, held, where a corporation engaged in the business of a commission merchant misapplies the proceeds of goods sold on consignment, its officers who knowingly participated in the wrong are individually liable, and may be sued jointly and severally.

·3. **Corporations.** Officer or stockholder who sells his stock in the corporation before the wrong is committed cannot be held personally liable.

In an action to recover for the value of cotton converted by a corporation where one of the defendants was an officer and stockholder in the corporation at the time that the cotton was received but had sold his interest and severed his connection with the corporation before the cotton was converted by the corporation held, he was not individually liable.

Appeal from Chancery Court of Shelby County; Hon. Israel H. Peres, Judge.

Modified.

George E. Neuhardt, of Memphis, for appellant.

R. S. Keebler, of Memphis, for appellee.

HEISKELL, J. This is a bill filed by the complainant, B. F. Hawkins, against Robt. I. Lane, D. T. Perkins and R. E. Person mainly upon the theory that defendants were partners in the cotton brokerage business, that Hawkins had shipped to defendants six bales of cotton to be sold on commission, that they had accounted for proceeds of one bale, but that they had failed to account for proceeds of the other five bales which they had sold and of which they had received the proceeds.

While the main theory of the bill is to sue defendants as partners, yet the allegations and prayer of the bill are broad enough to main-

tain the suit on the theory that the defendants are liable personally for the reason that as members and active managers of an insolvent corporation they collected and misappropriated money belonging to the complainant.

The record in the case is meager, but enough is shown to justify us in finding that on October 21, 1920, the corporation of Person, Lane & Perkins, Incorporated, was chartered, in which Lane had 35 shares of stock and Persons and Perkins 115 shares each. That each of the three were also directors. That the complainant Hawkins shipped his six bales of cotton to this corporation in the Fall of 1920. Lane sold his stock October 6, 1921. The cotton in question was sold January 20, 1923. After Lane sold his stock he was not connected with the corporation or its business in any way. After the proceeds of one bale had been sent to and received by the complainant, the corporation mailed its check for the proceeds of the five bales to complainant at his place of residence, Woodstock, Tennessee, but the check was returned, the post office of Woodstock having been discontinued. After the check was returned the money was used by the corporation and no effort made to find the complainant or get the money to him. Complainant was still living at the same place and could easily have been reached by mail, by rural delivery from Lucy, Tennessee.

Sometime thereafter an insolvent proceeding was instituted to wind up said corporation, and its affairs were placed in the hands of a receiver. It is conceded to be insolvent.

The chancellor first held that the defendants were a partnership and gave complainant a decree against them individually as partners. On a petition to rehear, however, he held that they were not a partnership, but a corporation and dismissed the complainant's bill, the theory of the chancellor evidently being that complainant could have no relief except such as could be obtained through the general creditors' suit.

The complainant has appealed and assigned errors. First, that the chancellor erred in holding that the defendants, Person, Lane & Perkins, were legally organized into a corporation. Second, that the court erred in holding that said three defendants were not liable to the complainant on the ground of having committed a breach of trust.

As to the first assignment, it is sufficient to say that a charter was obtained, directors elected, business carried on as a corporation, all stationery carrying the name of the corporation, and the complainant so dealt with defendants. There is nothing in the record upon which he can thus collaterally attack the existence of this corporation. This assignment is overruled.

Under the second assignment it remains to consider whether, notwithstanding the defendants were not a partnership, but members of a corporation, they are personally liable to complainant for the loss caused by the misappropriation of the proceeds of his cotton.

The following authorities seem to answer the question.

In the case of Nunnelly v. Southern Iron Company, 94 Tenn., 417, the court held the president and general manager of a corporation personally liable with the corporation for damages caused to a riparian proprietor by the long continued discharge of muddy water into a stream, from ore washers operated by the company with their sanction and knowledge of the damages caused thereby. The Court says:

"When a person enters into a contract with a corporation, through its agents or officers, fairly and in good faith, there can, under no circumstances, any liability attach to such agents or officers in respect to the contract, unless so stipulated. In such a case, the person gets just what he bargained for, a liability against, or a contract with the corporation alone. But the torts or wrongs of corporations, through its agents or officers, are governed by an entirely different principle of law. If the agent of a corporation, or of an individual, commits a tort, the agent is clearly liable for the same; and it matters not what liability may attach to the principal for the tort, the agent must respond in damages if called upon to do so. This principle is absolutely without exception—is founded upon the soundest legal analogies and the wisest public policy. It is sanctioned by both reason and justice, and commends itself to every enlightened conscience. To permit an agent of a corporation, in carrying on its business, to inflict wrong and injuries upon others, and then shield himself from liability behind his vicarious character, would often both sanction and encourage the perpetration of flagrant and wanton injuries by agents of insolvent and irresponsible corporations. It would serve to stimulate the zeal of responsible and solvent agents of irresponsible and insolvent corporations in their efforts to repair the shattered fortunes of their failing principals upon the ruins of the rights of others. Says Mr. Morawetz: 'The agents of a corporation are clearly liable for their tortious acts; they are therefore liable for any injury to the property of others . . . . and the liability is entirely independent of any liability which the company may have incurred.' 1 Morawetz on Corporations, sec. 569.

To the same effect is 1 Waterman on Corporations, p. 415, where it is said: 'The directors of a gas company were held liable for a nuisance created by the superintendent and engineer under a general authority to manage the works, though they were personally ignorant of the particular plan adopted, and, though such plan was a departure from the original and understood method, which the directors had no reason to suppose had been discontinued.'

In Wood on Nuisance, sec. 824, it is said: 'If the nuisance complained of is created by a corporation, the corporation and such of its directors as have the direction and control of its business, as well as its agents or servants who contributed to the nuisance, may be jointly sued or indicted therefor.' It will be seen that this author predicates the liability of the officers who have the direction and control of its business, upon the presumption alone that such officers know of and sanction the nuisance; whereas, the liability of the inferior agents or servants is founded upon their participation in the acts creating the nuisance. See also 1 Beach on Private Cor., sec. 266; Thompson on Liability of Officers and Agents, pp. 351, 355; Mechem on Agency, sec. 182; Peck v. Cooper, 54 Am. Rep. 231.''

More pertinent authority still is found in Fletcher's Cyclopedia of Corporations.

"When the proceeds of a sale of goods consigned to a corporation to be sold on commission, have been intentionally misapplied, the officers in control of the funds are individually liable. So where directors knowingly appropriate the proceeds of cotton owned by a third person and held by the corporation, or knowingly permitted the corporation to do so, or if they are chargeable with knowledge of such appropriation, they and the corporation were held to be jointly and severally liable for the loss.''

Two cases are cited to support this text and they fully warrant the statement of law given. These cases are: Cone v. United Fruit Growers Assn., 88 S. E. (N. C.) 860; Dollar v. Lockney Supply Co., 164 S. W. (Texas Court Civil Appeals), 1076.

In the first case, fruit was shipped on consignment and a part of the proceeds applied "to the purposes and expenses of the corporation and the conduct of its business." The head note accurately expresses the holding of the court:

"Where a corporation engaged in the business of a commission merchant misapplies the proceeds of goods sold on consignment, its officers who knowingly participated in the wrong are individually liable, and may be sued jointly and severally.''

In the other case, the plaintiff shipped cotton to be sold on commission. The broker, a corporation, sold the cotton and embezzled the proceeds and the directors were held personally liable. The court said:

"Corporate directors, who knowingly appropriate to the use of the corporation, the proceeds of cotton held by the corporation and belonging to another, or knowingly permitted the corporation to do so, are jointly and severally liable with the corporation therefor.'' Dollar v. Lockney Supply Co., Court Civil Appeals Texas, 1076.

Applying these authorities to the facts of the present case it is clear that Person and Perkins are liable to complainant. They were

all that remained of the corporation, were directors and in active charge of what business it did. They sold the cotton of complainant and they wrongfully misappropriated the proceeds. They not only knew about the whole matter, but participated in it. In substance and effect, knowing the corporation to be insolvent, to sell this old man's cotton and use the proceeds, was close kin to larceny. It is hard to image a stronger case, to call for the application of the rule, holding the agents of the corporation personally liable.

However, we cannot include defendant Lane in the personal liability. He sold his stock in the corporation fifteen months before the cotton was sold. He had nothing more to do with the concern. The cotton of complainant was on hand fifteen months after Lane severed his connection with the corporation. The cotton was properly sold and one bale accounted for. All that Person & Perkins had to do, to escape liability, was to pay over the proceeds of the other five bales instead of misappropriating the money. Lane had nothing to do with this. It is claimed that he did not pay for his stock. That question is not before us. If that claim is true it can be worked out only through the general creditors' suit. It is also said he sold his stock because he knew the corporation was insolvent. That may be true, and yet that would not make him liable. An insolvent corporation or an insolvent individual may as broker sell a client's cotton and pay over to him the proceeds, and may so handle those proceeds that no creditor can touch them. It was the failure to do this that renders Person & Perkins personally liable, and the fact that Lane had nothing to do with the wrong perpetrated upon complainant that excuses him.

The second assignment is sustained as to R. E. Person and D. T. Perkins and overruled as to R. I. Lane. A decree will go in favor of complainant against Person and Perkins jointly and severally for the amount derived from the sale of said five bales of cotton, $413.48, with interest from January 20, 1923, and costs.

Owen and Senter, JJ., concur.