SAM JONES, NEXT FRIEND, *v.* FIRST STATE BANK, GUARDIAN,
*et al.*

(*Nashville.* December Term, 1928.)

Opinion filed February 9, 1929.

WALTER HANCOCK, for complainant, appellee.

STERLING BROWN and MELTON & CUMMINGS and ROBERTS, & ROBERTS, for defendant, appellants.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

The bill charges that in September, 1919, the First State Bank qualified as guardian of Georgia Higgins and France Higgins and received several thousand dollars of their money, for which they were given credit on the books of the Bank, but their money was commingled with the other funds of the Bank and not loaned or invested, as required by statute, and that their funds were thereby converted.

The bill further charges that in August, 1923, the Bank was placed in the hands of a receiver, and that creditors of the Bank will not receive more than ten per cent of their claims.

The primary purpose of the bill is to hold the defendants, directors of the Bank, personally responsible for the funds so converted.

The amount due Georgia Higgins is $1694.95, and France Higgins is due $1573.54.

Georgia Higgins subsequently married Sam Jones, who brings this suit as next friend of said two wards.

The Chancellor entered a decree in favor of complainants for said sums, with interest, and upon appeal his decree was affirmed by the Court of Appeals.

The directors, with the exception of W. D. Preston, in due time, filed their petition for writ of *certiorari*, which has heretofore been granted, and the cause ably argued at the bar of this court.

The charter of the Bank authorized it to qualify as guardian, but the directors never officially or individually instructed the cashier, W. D. Preston, to qualify the Bank as guardian of these or any other infants, and, in fact, did not know that he had done so, or that the Bank had any funds belonging to complainants. It further appears that this is the only instance in which the Bank, during its existence, attempted to act as guardian.

The Court of Appeals, in its opinion, says:

"The custody of this fund and the consequent duty of the Bank to administer it properly, and of the directors to see that it was administered properly would have been at once apparent to the directors if they had examined the books of the Bank."

As we interpret the opinion of the Court of Appeals, they held that these directors were guilty of gross negligence in not examining the books of the Bank, ascertaining thereby that the Bank was guardian of complain-

ants, and then making investigation as to whether the funds were being handled in a lawful manner.

In *Wallace* v. *Lincoln Savings Bank,* 89 Tenn., 659, it was said:

"A director in a suit between himself and the corporation, or those suing upon the corporate right of action, is not presumed to have knowledge of all that is shown by the books of the company."

As a practical proposition, it would be impossible for a director to keep informed as to the great number of entries on the books of a modern bank. In this cause it is not shown that these directors were inactive, did not attend the meetings of directors, select competent officials, exercise general supervision over the activities of the Bank, or that they turned over the management of the Bank to the exclusive control of the cashier. In other words, that they were guilty of such malfeasance, misfeasance or negligence in office as to make them amenable to the corporation for losses sustained by the Bank.

The duties and liabilities of such directors are pointed out with particularity in *Wallace* v. *Lincoln Savings Bank, supra.* It is unnecessary to pursue this matter further since this is not a suit between the directors and the corporation, or those suing upon the corporate right of action, but this is a suit by creditors against the directors of the Bank, and is controlled by the principles announced in *Minton* v. *Stahlman,* 96 Tenn., 102, in which this court said:

*(1)* "As said by this Court in *Hume* v. *Bank,* 9 Lea, 728, 'a director is the agent of the corporation, and, ordinarily, is only liable to the corporation. If he becomes liable directly to a creditor, it must be by statute or by some

conduct which creates a privity of contract between them, or which results in a tortious injury to the creditor for which an action *ex delicto* will lie.'

"Says Mr. Thompson in his Commentaries on Private Corporations, Vol. 111, Sec. 4137: 'The fact that directors and officers of a corporation have mismanaged its business does not render them liable to creditors unless they are made liable by the provisions of the articles of incorporation or by statute. The proposition is that a wrong to the corporation which may and does affect the credit of the company and the creditors generally is not a wrong to them as individuals, and they cannot maintain an action against the directors as for a tort.' Again, the author says: 'Neither, in the absence of a special statute, are the directors of a bank liable to a general depositor for mismanaging the affairs of a bank so that his debt is lost, for, unless they are made liable by statute, the breach of duty of which they have been guilty is to the bank and not to its customers. But it is conceded,' continues the author, 'that directors of a bank may make themselves liable to ordinary depositors in damage for false and fraudulent representations made by them, whereby the depositors have suffered loss, and, perhaps, also for acts done by them with intent to deceive and defraud the public generally, which have had that effect and which have caused loss to such depositors.' *Ib.,* Sec. 4138; *Zinn* v. *Mendel,* 9 West Va., 595.

"We have, in this State, a statute regulating the individual liability of bank directors to the creditors of the corporation. Section 2507 (M. & V.), Code, provides, viz.: 'And, if any director or directors of any of the banks in this State shall be guilty of any fraud or willful mismanagement of the affairs of such bank, by which any

loss shall be occasioned to its creditors, such director or directors, upon legal ascertainment of the facts, shall be individually liable for such loss,' etc.

"This statute fixes a rule for determining the individual liability of banking directors to the creditors of the corporaton, and the basis of that liability is fraud or willful mismanagement. It was held by this Court, in *Hume* v. *Bank,* 9 Lea, 728, that 'this section provides for a case of intentional fraud and willful mismanagement.' It is not tantamount to a charge of intentional fraud or willful mismanagement to allege that, 'having due notice and knowledge of such facts and circumstances as, by . ordinary diligence and business skill, would have shown them its true financial condition, which was that of insolvency.' This, at most, is a charge of negligence and inattention, whereas, there is no liability to creditors or depositors, under this statute, without fraud or willful mismanagement."

*(2)* There is no insistence in this cause that these directors are guilty of any fraud, and the only mismanagement relied upon is failure to examine the books, or find out in some other manner that the Bank had qualified as guardian for these infants and had not used their funds in a statutory manner. At most, this is only negligence, and it is not shown to have been "willful," within the meaning of the statute. In 3 R. C. L., 462, it is said:

"The courts have been reluctant to establish a strict rule of liability; lest, as has been frequently said, by so doing they deter men of integrity and ability from accepting the responsibilities of the position. Generally it is declared that directors must exercise reasonable care and prudence, but this rule is necessarily indefinite, since in many cases it is hard to determine just what reason-

able care and prudence would be. While it is incumbent on the directors to appoint all the officers necessary to carry on the business of the bank, and to use ordinary diligence in the selection of men qualified to fill such positions, they do not guarantee the honesty and diligence of the employees they select; and after having selected employees of unquestioned reputation they are justified in acting on the supposition that such employees will be honest. They are not required to adopt any system of espionage over their cashier, or any of their subordinate agents, or to entertain suspicion without some apparent reason and until some circumstance transpires to awaken a just apprehension of want of integrity, they have a right to assume that such agents are honest and faithful.''

Concededly no contractual relations existed between these parties.

*(3)* ''Willful, as used in the statute, means intentional, purposeful, designedly. 40 Cyc., 928; Words & Phrases (2nd Series), vol. 4, 1294-1295; *Smith* v. *State,* 119 Tenn., 321; *Railroad* v. *Wright,* 147 Tenn., 619; *Ezell* v. *Tipton,* 150 Tenn., 312.

Since these directors had a right to assume that the cashier was performing his duties in a lawful way, and since they had not authorized him to qualify the Bank as guardian, and had no knowledge that he had done so, it would require a straining of the statute to hold them guilty of *willful misconduct* in not surmising that the Bank had qualified as guardian of complainants and might have converted their funds.

We doubt whether, in the absence of knowledge of such a condition, or of facts sufficient to put the directors on notice, such a quest was ever undertaken by a board of

directors. But assuming that an ordinarily prudent person would have made investigation as to such matters, the failure of the directors to do so can, in the circumstances of this cause, be nothing more than negligence, which would not make them liable to complainants.

In *Shea* v. *Mabry,* 1 Lea (69 Tenn.), 319, the president, with the approval of the directors, misappropriated $28,000 of the funds of the corporation. This was willful mismanagement.

We conclude, therefore, that these directors are not liable, and the decree of the Court of Appeals will be reversed and the bill dismissed, except as to W. D. Preston, who did not appeal, and Bill Milligan, uncle of the complainants, who had personal knowledge of the transactions involving this guardianship, and who directed Preston in the handling of these funds.

The successful directors will be taxed with all costs accrued at their instance. The balance of the costs will be paid by complainants.