DUNCAN v. WILLIAMSON et al.—74 S. W. (2d) 215.

Western Section. February 24, 1933.

Petition for Certiorari Overruled by Supreme Court, May 20, 1933.

Brahan Houston and Hugh Stanton, both of Memphis, for appellant.

J. W. Canada and J. E. McCadden, both of Memphis, for appellees.

HEISKELL, J.   The plaintiff seeks to hold three officers of the bankrupt corporation, S. M. Williamson & Co., liable for loss of a fund placed with said corporation for investment.   The trial judge, at the close of the plaintiff's proof, directed a verdict in favor of the defendants, and the plaintiff has appealed.

The theory of plaintiff is that she turned over to S. M. Williamson & Co. a fund of $10,000 for investment; that same was kept invested for a number of years, but for some time prior to the bankruptcy of the corporation $5,500 of said fund was left uninvested, and deposited in the general account of the corporation, which went to the general creditors.   Plaintiff contends that this was a trust fund; that the placing of same on deposit to the account of the corporation, which was checked upon for general purposes, was a conversion of the trust fund, for which the defendant officers, who managed the affairs of the corporation, were personally liable.   The theory of the defendant is that upon the facts made out by plaintiff's proof there was no conversion, and, if there was a conversion by the corporation, the defendants, as officers thereof, are not liable.

In 1913 or 1914 the plaintiff, having this $10,000 left to her by her husband's death, was solicited a number of times by those connected with S. M. Williamson & Co. to place the money with them

for investment. She went with her father, J. N. Ford, and talked with S. M. Williamson, the president. She told him she wanted to keep the money invested in safe first mortgages on real estate, and that, as she had two children, she would like to get the interest monthly. She knew that ordinarily interest was paid semiannually. Williamson told her he never loaned more than 50 per cent of the value of real estate, so the investments he would make would be safe; that he would be willing to advance her the interest each month, repaying when the interest came in; and that they had an opportunity to lend the money at once.

The money was turned over and was loaned at once for ten years, but was repaid at the end of seven years, when it was promptly reloaned. Mrs. Duncan received a $50 check each month. Only a few times did it fail to appear promptly, and then it was said this was due to an oversight. After the first loan, she gave little attention to the matter of investment, trusting Williamson & Co. to keep the fund invested. She was never notified that the fund was not invested at any time. On March 1, 1928, $1,500 of this money was paid to Williamson & Co., and on June 14, 1929, $4,000 was so paid. This $5,500 was deposited to the credit of S. M. Williamson & Co. on their general checking account in the Bank of Commerce, and was never reinvested. In October or November, 1930, Williamson & Co. went into bankruptcy, and plaintiff could claim only as a general creditor of the bankrupt corporation.

It is not denied that this fund was turned over to S. M. Williamson & Co. for investment. It is said, however, that this fund was handled just like all other investment funds were handled. That is no defense if other funds were mishandled. Again it is insisted that upon the facts stated the plaintiff, by accepting the interest and leaving the management of the fund to Williamson & Co., agreed, either expressly or by implication, that the fund should be handled as it was and therefore there could be no conversion. We do not think so. She says it was understood that the interest paid monthly was only to be paid out of interest collected from the investment. She was not informed that any of the fund was not invested at any time. Williamson had told her they would always have opportunities for reinvestment as soon as a loan was repaid. Even after the bankruptcy she did not think she would lose anything, and she would not have lost anything if her money had been invested, or while uninvested kept in a separate deposit as a trust fund. We can see nothing in what the plaintiff did to change the nature of this investment fund to anything but a trust fund.

Commingling of trust funds by the trustee with its own general funds is conversion of the former for which the trustee is held liable universally. Sanders, Trustee, v. Forgasson, 3 Baxt. (62 Tenn.), 249-255; Hill v. Alston, 12 Heisk. (59 Tenn.), 569; Mason v. Whitthorne, 2 Cold. (42 Tenn.), 242.

Mrs. Duncan was never notified that this money was so deposited as not to be safe. Much is said about Williamson himself having $5,000 or more on deposit in the same account. That has nothing to do with the question here. If the Bank of Commerce had failed and the sole question had been his good faith and care in selecting a depository, his having deposited his own money in the same bank would be very pertinent; but that a trustee has money of his own on deposit to his own credit is no excuse for depositing trust funds to the same account. If the trust fund had been kept separate in the same bank, there would have been no loss to plaintiff, and, if there had been loss by failure of the bank, there would have been no liability on the part of the defendants.

Counsel for defendants contend that in any event the directors and officers of the corporation are not liable. The cases cited to support this proposition are, for the most part, cases where creditors of a bank seek to hold the directors of the bank responsible for negligence. Deaderick v. Bank of Commerce, 100 Tenn., 457, 45 S. W., 786; Briggs v. Spaulding, 141 U. S., 132, 11 S. Ct., 924, 35 L. Ed., 662; Wallace v. Lincoln Sav. Bank, 89 Tenn. (5 Pickle), 649, 15 S. W., 448, 24 Am. St. Rep., 625.

These cases hold that bank directors are not trustees as to creditors of the bank. No authority is needed to settle the question that bank depositors are mere creditors of the bank, and that a deposit does not become a trust fund, but a mere debt. These cases do not meet the question raised in the present case, where it is sought to hold the officers, who managed the investment funds of a trust company, liable for the conversion of a trust fund.

The case most nearly in point of those cited for defendants is Jones v. First State Bank, 158 Tenn., 356, 13 S. W. (2d), 326, 327. That case did involve a trust fund, and the Supreme Court, reversing the Court of Appeals, held the directors, as such, not liable. The court says:

"The Court of Appeals, in its opinion, says:

" 'The custody of this fund and the consequent duty of the Bank to administer it properly, and of the directors to see that it was administered properly would have been at once apparent to the directors if they had examined the books of the Bank.'

"As we interpret the opinion of the Court of Appeals, they held that these directors were guilty of gross negligence in not examining the books of the bank, ascertaining thereby that the bank was guardian of complainants, and then making investigation as to whether the funds were being handled in a lawful manner."

The court considers these directors as liable only for willful mismanagement, that is, intentional mismanagement, under Code M. & V., sec. 2507. The opinion concludes:

" 'Willful,' as used in the statute, means intentional, purposeful, designedly. 40 Cyc., 928; 4 Words and Phrases, Second Series, pp.

1294, 1295; State v. Smith, 119 Tenn., 521, 105 S. W., 68; Railroad v. Wright, 147 Tenn., 619, 250 S. W., 903; Ezell v. Tipton, 150 Tenn., 312, 264 S. W., 355.

"Since these directors had a right to assume that the cashier was performing his duties in a lawful way, and since they had not authorized him to qualify the bank as guardian, and had no knowledge that he had done so, it would require a straining of the statute to hold them guilty of willful misconduct in not surmising that the bank had qualified as guardian of complainants and might have converted their funds.

"We doubt whether, in the absence of knowledge of such a condition, or of facts sufficient to put the directors on notice, such a quest was ever undertaken by a board of directors. But assuming that an ordinarily prudent person would have made investigation as to such matters, the failure of the directors to do so can, in the circumstances of this cause, be nothing more than negligence, which would not make them liable to complainants.

"In Shea v. Mabry, 1 Lea (69 Tenn.), 319, the president, with the approval of the directors, misappropriated $28,000 of the funds of the corporation. This was willful mismanagement.

"We conclude, therefore, that these directors are not liable and the decree of the Court of Appeals will be reversed and the bill dismissed, except as to W. D. Preston, who did not appeal, and Bill Milligan, uncle of the complainants, who had personal knowledge of the transactions involving this guardianship, and who directed Preston in the handling of these funds."

Preston, the cashier in that case, was the only defendant who occupied the same position as the defendants in the present case, and he did not appeal. (We do not know whether Bill Milligan was connected with the bank or not.) If Preston had appealed, we take it he would still have been held liable because the defense of the mere directors did not apply to him. A corporation can do no wrong except by the act of some individual or individuals. Preston, the cashier, was the actor there, and he was liable. By the same token the defendants were the actors here and therefore liable. To say the least, that case does not help the contention of the defendants in the present case.

The torts or wrongs of corporations through agents or officers are governed by a different rule from that applicable where directors are sought to be held liable for corporate action involving negligence, or where willful conduct cannot be attributed to the directors. Hawkins v. Lane, 3 Tenn. App., 221; Nunnelly v. Southern Iron Co., 94 Tenn., 417, 29 S. W., 361, 28 L. R. A., 421.

In Hawkins v. Lane, two cases are cited—Cone v. United Fruit Growers' Ass'n, 171 N. C., 530, 88 S. E., 860, 862, and Dollar v. Lockney Supply Co. (Tex. Civ. App.), 164 S. W., 1076.

In the first case fruit was shipped on consignment and a part of the proceeds applied "to the purposes and expenses of the corporation and the conduct of its business." The headnote accurately expresses the holding of the court:

"Where a corporation engaged in the business of a commission merchant misapplies the proceeds of goods sold on consignment, its officers, who knowingly participated in the wrong, are individually liable, and may be sued jointly or severally."

In the other case the plaintiff shipped cotton to be sold on commission. The broker, a corporation, sold the cotton and embezzled the proceeds, and the directors were held personally liable. The court said:

"Corporate directors, who knowingly appropriated to the use of the corporation the proceeds of cotton held by the corporation and belonging to another, or knowingly permitted the corporation to do so, are jointly and severally liable with the corporation therefor."

In Shea v. Mabry, 1 Lea (69 Tenn.), 319, the president and directors of a railroad corporation were held personally liable for the misappropriation of corporate funds to an unlawful purpose.

We are referred to no case holding that directors or officers actually participating in a conversion of trust property by a corporation are not personally liable. Cases are cited by counsel for plaintiff holding that under such circumstances the directors are liable. Some cases go so far as to hold that directors who merely acquiesce in the conversion of trust property by associate directors are liable.

Vujacich v. Southern Commercial Co., 21 Cal. App., 439, 132 Pac., 80, 81, involves a claim of laborers for funds deposited for safe-keeping, mingled with the corporate funds and used for corporate purposes. This was known to the directors, but no authority was given to the corporation to so use the money deposited. The directors were held liable. The same defense was made there as here, that, while the corporation may be liable, the directors are not personally liable. In the opinion the court says:

"In the case of Winchester v. Howard, 136 Cal., 433, 64 Pac., 692, 69 Pac., 77, 89 Am. St. Rep., 153, while that decision involved different facts, much of what is there said is pertinent as an argument in support of the judgment against appellants. In that decision it is declared that 'directors and officers of corporations, as well as trustees, have always been held responsible for loss resulting from misappropriations of the trust property made by them or with their consent.' "

Walker v. Howell, 209 Iowa, 823, 226 N. W., 85, 89, was a suit against directors for conversion of collateral by the corporation. The court, in holding the directors liable, said:

"On behalf of Howell and Taylor, it is argued that they, as the corporation's officers and directors, are not responsible to appellants for the loss aforesaid. Regarding what may be the law in reference to an officer's liability for nonfeasance, we are not now concerned,

and make no pronouncement upon it. Appellees Howell and Taylor were the managers in control of the corporate activities. They, in that capacity, furnished the collateral to the trustees. Likewise, these managers arranged for, sanctioned, and generally controlled transfers and substitutions of collateral. That the corporation misappropriated and converted the securities there is no doubt. (Citing authorities.)''

In Sweet v. Montpelier Savings Bank & Trust Co., 73 Kan., 47, 84 Pac., 542, 543, the Montpelier Savings Bank &' Trust Company forwarded the Trust Company of America notes for collection, with instructions to remit the proceeds when collected. The notes were collected, the proceeds credited to the account of the Montpelier Savings Bank, and mingled with the funds of the Trust Company of America. The Trust Company of America passed into the hands of a receiver before any remittance was made. This suit is to hold Sweet and associate directors personally liable for conversion of proceeds collected.

The court said:

''When the managing agents of a trust company mingle money collected for another with the current funds of the company for use in its business, in violation of the express directions of the owner to remit, or knowingly permit their subordinates to do so, and the fund is thereby lost, such agents will be personally liable ·to the owner therefor, although, at the time of such misappropriation, it was the intent of such managing agents to account for and return the money to the owner upon demand. We think that this court in its former decision of this case touched the limit of liberality in favor of trust company officers. The rapidly increasing volume of important business transacted between persons widely separated from each other, wherein trust companies and similar agencies are necessarily employed, demand that the officers of such agencies be held to a strict performance of the duties confided to them, and we do not wish to further limit the rule of their responsibility already adopted. . . .

''Another objection made by the plaintiff in error is that the verdict against Sweet is not sustained by the evidence. After a careful examination of the evidence, we think it not only justified the verdict against Sweet, but would have sustained one against his codefendants. Sweet was president of the company. A large part of its business passed through his hands and was brought to his personal attention. He had ample opportunity to know about the transaction in question. It is true that this was one of a mass of items presented to him, and might have failed to make any distinct impression upon his mind. Whether it did or not was a proper question for the jury.''

The case of Sweet v. Montpelier Savings Bank is cited with approval in Dollar v. Lockney Supply Co. (Tex. Civ. App.), 164 S. W., 1076.

To the same effect as the cases cited and quoted from are the following authorities: McCollom et al. v. Dollar (Tex. Civ. App.), 176 S. W., 876; Rose v. Bernhardt, 107 N. J. Law, 501, 153 Atl., 609; Miller v. Travelers, 39 App. D. C., 340; Bluefields S. S. Co. v. Lala Ferreras Cangelosi S. S. Co. et al., 133 La., 424, 63 So., 96; 4 Fletcher, Cyclopedia of Corporations, secs. 2539 and 2540.

■ In view of the strong plea made in the present case as to the honesty and good faith of the defendants, we wish to call special attention to the language of the court in Sweet v. Montpelier Savings Bank & Trust Co., supra: "Such agents will be personally liable . . . although, at the time of such misappropriation, it was the intent of such managing agents to account for and return the money to the owner upon demand." A conversion may be merely technical. It may involve no intention to appropriate to one's own use. It may be consistent with honesty of purpose, but, if there is a conversion and loss results, the officer who acts for the corporation, or has knowledge is liable. An individual trustee who deposits a trust fund to his individual credit, resulting in loss of the fund, is liable for a conversion, although he may not have dreamed of appropriating the money to his own use and may have intended to devote the money strictly to the uses of the trust.

■ In view of these authorities, we are of the opinion that, if there was a conversion of this fund by S. M. Williamson & Co. under the facts as presented, the managing officers are liable. We think also that the facts presented by the witnesses for plaintiff would support a verdict for plaintiff as to the conversion and the liability of the defendants personally; therefore we conclude that it was error to direct a verdict for defendants and that the case should have been submitted to the jury. The assignment of error to this effect is sustained. The case is reversed and remanded for a new trial.

It is not necessary to dispose of the other assignments of error.

Anderson and Senter, JJ., concur.