Joe Jack MERRIMAN,
Plaintiff-Appellant,

v.

Robert B. SMITH, Jr., Individually, Robert B. Smith, III, Individually, Jerrell H. Parchman, Individually, Billy Jack Goodrich, Individually, C. R. Womack, Individually, C. U. Cochran, Jr., Individually, George A. Smith, Individually, Grady Arnold, W. T. Badgett, R. E. McKenzie, and B. G. Spain, Partners, d/b/a Arnold & Badgett, Griff A. Dodds, H. L. Townsend, Sr., W. A. Whitsett, P. A. Turner, and Orville F. Rush, Defendants-Appellees,

and

CONTINENTAL BANKERS LIFE INSURANCE COMPANY,
Plaintiff-Appellant,

v.

Robert B. SMITH, Jr., Individually, Robert B. Smith, III, Individually, Jerrell H. Parchman, Individually, Billy Jack Goodrich, Individually, C. R. Womack, Individually, C. U. Cochran, Jr., Individually, George A. Smith, Individually, Grady Arnold, W. T. Badgett, R. E. McKenzie, and B. G. Spain, Partners, d/b/a Arnold & Badgett, Griff R. Dodds, H. L. Townsend, Sr., W. A. Whitsett, P. A. Turner, and Orville F. Rush, Defendants-Appellees.

Court of Appeals of Tennessee,
Western Section.

Aug. 22, 1979.

Certiorari Denied by Supreme Court
May 27, 1980.

William Russell Rice, Jr., Rice & Rice, Jackson, for plaintiffs-appellants.

Sidney W. Spragins, Spragins & Murchison, Jackson, for defendants-appellees, Robert B. Smith, Jr., Robert B. Smith, III, and George A. Smith.

James F. Butler, Goodrick & Butler, Jackson, for defendant-appellee, Billy J. Goodrich.

Jack Manhein, Sr., Jackson, for defendants-appellees, Grady Arnold, W. T. Badgett, R. E. McKenzie and B. G. Spain, d/b/a Arnold & Badgett.

James N. Bryan, Jr., Woods & Woods, A Professional Association, Nashville, and Homer H. Waldrop and David R. Farmer, Waldrop, Hall, Tomlin & Farmer, Jackson, for defendants-appellees, Griff R. Dobbs, P. A. Turner, C. R. Womack, W. A. Whitsett, H. L. Townsend and Orville Rush.

William B. Cain, Cain & Moore, Columbia, for defendant-appellee, Clarence U. Cochran, Jr.

Jerrell H. Parchman, pro se.

## OPINION

LEWIS, Judge.

These suits arose from the bankruptcy of Peoples Protective Corporation [hereinafter referred to as PPC] subsequent to a sale by PPC to plaintiff Merriman of Peoples Protective Life Insurance Company [hereinafter referred to as PPLIC], a wholly owned subsidiary of PPC.

Plaintiff Merriman is a Kansas City businessman with past experience in purchasing financially unsound insurance businesses, having purchased at least four others prior to this sale.

Plaintiff Continental Bankers Life Insurance Company [hereinafter referred to as CBLIC], one of Merriman's insurance companies, made a loan to PPC, through its agent, plaintiff Merriman, as part of the PPLIC sale.

Defendants Grady Arnold, W. T. Badgett, R. E. McKenzie and B. G. Spain are partners in the accounting firm of Arnold & Badgett which audited certain financial statements prepared by PPC for use in PPC's annual report to its stockholders. These defendants are sued because plaintiffs allege they relied upon the consolidated financial statements prepared by the firm and the information therein was false.

The remaining twelve defendants are alleged to be, both at the time of the occurrences averred and now, directors of PPC and PPLIC. During the course of the proceedings below, they are sometimes referred to as being either inside or outside directors, the former being both officers and directors of the corporation(s) and the latter being solely directors. These defendants are sued for negligent misrepresentation on the theory that they knew or should have known that PPC was on the brink of bankruptcy at the time of the sale. The outside directors are Dodds, Turner, Womack, Whitsett, Townsend, Rush and Parchman.

As evidenced by the eight volumes of technical record and twelve volumes of the bill of exceptions, this litigation was difficult and complex. Therefore, we will omit much of the detail here and organize the events in as simple and concise form as possible.

Plaintiff Merriman and his associate, Mr. Fickes, an actuarial consultant, learned of the poor financial condition of PPC and that its insurance division, PPLIC, might be for sale. The two men flew to Jackson, Tennessee, to investigate the company and obtain financial information. Merriman then prepared an offer to purchase PPLIC from PPC. The offer, by letter of April 17, 1974, was in great detail containing the terms of the sale and a complex formula was used which Merriman had utilized in past purchases. By its terms, the offer expired if not accepted within 24 hours. In response, PPC counteroffered, requiring Merriman to assist PPC in obtaining a $500,000.00 loan with which to purchase the pledged stock of PPLIC. The counteroffer also conditioned the sale of PPLIC upon the PPC Board of Directors' approval.

Merriman agreed to the terms of the counteroffer but was unable to obtain the $500,000.00 loan assistance for PPC. Thus, to consummate the sale, Merriman agreed to loan PPC $153,000.00 (and later an additional $41,500.00 loan was made) and to cause his insurance company, CBLIC, to likewise loan PPC $95,000.00. Merriman,

his advisor and representatives of PPC then flew to Nashville to obtain approval of the sale from the Tennessee State Department of Banking and Insurance.

On May 1, 1974, the sale of PPLIC was consummated and the stock of PPLIC was transferred to Merriman.

In July of 1974, PPC filed a Chapter XI bankruptcy in the United States District Court at Jackson, Tennessee. The case was subsequently converted to a Chapter III bankruptcy. CBLIC instituted suit on July 11, 1974, and Merriman did likewise on January 14, 1975. The suits were consolidated for trial.

Defendants all filed Motions to Dismiss which were overruled. The consolidated trials began on September 14, 1977 and lasted seven days. When plaintiffs rested their case, defendants moved for dismissal. Plaintiffs were given 30 days within which to file a written response to the motions. They were later given an extension of time. Plaintiffs filed their brief and a Motion to Amend their Complaints to allege the directors' personal financial interest as influencing their decision to sell PPLIC.

On January 30, 1978, the Chancellor filed his Memorandum Opinion dismissing the Complaints and denying the Motion to Amend.

The Chancellor, applying *City of Columbia v. C. F. W. Construction Co.*, 557 S.W.2d 734 (Tenn.1977), found that plaintiffs had failed to establish by a preponderance of the evidence that the defendants supplied false or misleading information to plaintiffs or that plaintiffs relied upon any information received from any of the defendants.

Plaintiffs have filed a lengthy and exhaustive brief on this appeal in which they assign 30 errors in the court below. We find it unnecessary to reproduce the assignments in this opinion. They are divisible basically into two groupings, those that apply to defendants directors and those that apply to the defendants from Arnold & Badgett. Within these subdivisions, the assignments contain clearly defined issues which dispose of the merits of this appeal.

## A. ASSIGNMENTS OF ERROR RELATING TO THE DIRECTORS

The issues raised by the thirty assignments of error, the portions thereof relating to the directors, are:

1. May the creditors of a corporation, on their own behalf, sue the directors of the corporation on the ground that the latter have failed to properly manage the corporate affairs?

2. Did the Chancellor properly dismiss plaintiffs' complaints on the grounds that plaintiffs failed to establish by a preponderance of the evidence that:

(1) the defendants supplied any false or misleading information to plaintiffs; and,

(2) that plaintiffs relied upon information received from any of the defendants?

## I. THE CORPORATE DIRECTORS' PERSONAL LIABILITY TO THE CORPORATION'S CREDITORS FOR CORPORATE MISMANAGEMENT

The current law in Tennessee, that creditors of a corporation have no right of action against directors for mismanagement was first enunciated in *Hume v. Bank*, 77 Tenn. (9 Lea) 728 (1882), wherein the court declares that a director, as an agent of the corporation, is liable to the corporation. However, the court noted that a director may become personally liable to a creditor by either (1) statute or (2) "by some conduct which creates a privity of contract between them, or which results in a tortious injury to the creditor for which an action *ex delicto* will lie." *Id.* at 747.

The rationale for the *Hume* proposition rests in the concept of privity, statutory or otherwise. That concept was thoroughly discussed in *Deaderick v. Bank*, 100 Tenn. 457, 45 S.W. 786 (1897).

There, depositors of the bank filed a bill to hold some of the directors liable for lost deposits occasioned by the sanctioning of loans to insolvent parties resulting in the bank's subsequent insolvency. The bill con-

tained many charges of fraud, gross neglect and willful mismanagement on the part of the directors. The court directed its attention to the directors' liability based on statute, Shannon's Code § 3242, repealed in Chapter 36 § 3 (1969), and the common law.

The court noted:

It is, therefore, the general rule that no action can be maintained by third persons against the agent to recover damages for any injury which they have sustained by reason of the nonperformance or neglect of duty which the agent owes to his principal. 100 Tenn. at 462, 45 S.W. at 788.

The court continued:

That directors are liable in an action at law to their principal, the corporation, for losses resulting to it from their malfeasance, misfeasance, or their failure or neglect to discharge the duties imposed by their office, and in equity, to the stockholders, for these losses, the corporation declining to bring suit, is clear, upon the authorities. Though the corporation is the legal entity, yet the stockholders are interested in the operations of the corporation while in a state of activity, and, upon its dissolution, in the distribution of its property, after all debts are paid; and so its officers or agents stand in a fiduciary relation to both.

But it is otherwise as to creditors. The directors of a going corporation, whether able to pay its debts or not, owe no allegiance to them. It is true that the creditors may extend credit upon the faith that the company has assets to pay its debts, and that these assets are prudently managed, yet they are strangers to the directors; they maintain no fiduciary relation with them; there is a lack of privity between the two. Id. at 463–464, 45 S.W. at 788.

Further:

A creditor of a going corporation, being thus a mere stranger, we think it is clear that he can no more, either in law or equity, set in motion litigation to hold its directors liable for losses attributable merely to inattention, than could the creditor of any other insolvent debtor

maintain a suit against his agent, under similar circumstances. Id. at 464–465, 45 S.W. at 788.

The Deaderick court was careful to note that the mismanagement under discussion was in the sense of nonfeasance rather than malfeasance or misfeasance and, restricting the rule in that sense, deemed it a sound view of the law.

That a stockholder, rather than a creditor, is a proper complainant under this and similar factual patterns is well established by many authorities. See, e. g., Halsey v. Ackerman, 38 N.J.Eq. (8 Stew.) 501 (1884) (complainants were both stockholders and creditors but reliance for recovery was primarily as stockholders); Stockton v. Bank, 32 N.J.Eq. (5 Stew.) 163 (1880) (complainant confined to relief as to his capital stock but not as to his debts against the company); Farwell v. Great Western Tel. Co., 161 Ill. 522, 44 N.E. 891 (1896) (stockholders suing officers for acts of malfeasance); Chester v. Hilliard, 36 N.J.Eq. (9 Stew.) 313 (1882) (complainants deemed to be in a relation to the company similar to that of stockholders in an ordinary business corporation); Warner [Penn. Bank] v. Hopkins, 111 Pa. 328, 2 A. 83 (1886) (distinguished in Deaderick, supra, for not conforming to its cited authorities).

In its analysis of Tennessee case law, the Deaderick Court could not find any supporting authority for complainants' position. See the discussed authorities of: Minton v. Stahlman, 96 Tenn. 98, 34 S.W. 222 (1896) and Hume v. Bank, 77 Tenn. (9 Lea) 728 (1882) (complainant being a mere creditor the action was at law and against the directors for want of prudent supervision based on statutory liability to creditors for the directors' malfeasance); Hume v. Bank, supra, (to enable creditors to sue directors directly, they must have some independent cause of action, either legal or equitable).

The distinctions and principles enunciated in Deaderick, supra, were expounded on in Drake v. Hagan, 108 Tenn. 265, 67 S.W. 470 (1902):

The rule and the reason for it are well stated in a recent case in Louisiana: "At common law, an agent is personally responsible to third parties for doing something which he ought not to have done, but not for not doing something which he ought to have done; the agent in the latter case being liable to his principal only. For nonfeasance, or mere neglect in the performance of duty, the responsibility therefore must arise from some express or implied obligation between particular parties standing in privity of law or contract with each other. No man is bound to answer for such violation of duty or obligation except to those to whom he has become directly bound or amenable for his conduct. . . . An agent is not responsible to third persons for any negligence in the performance of duties devolving upon him purely from his agency, since he cannot, as agent, be subject to any obligations toward third persons, other than those of his principal. Those duties are not imposed upon him by law. He has agreed with no one, except his principal, to perform them. In failing to do so, he wrongs no one but his principal, who alone can hold him responsible."

"In determining the liability of an agent to third persons for damages resulting from his conduct as agent, a distinction is usually drawn between those cases in which the injury complained of is the result of mere nonfeasance or omission of duty on the part of the agent in the course of his employment, where such default does not amount to misfeasance, and those in which the injury arises from some act of misfeasance or positive wrong on his part."

"With reference to the former class of cases, the established doctrine is that the agent's liability is solely to his principal, there being no privity between him and third persons, but only between him and his principal. Hence, as to all such negligences and omissions of duty, the agent is not liable to third persons, but the general maxim respondeat superior applies." Am. & Eng. Ency. L., Vol. 1, p. 1131 (2d ed.); Sherman and Redfield on Negligence (5th ed.), Sec. 243.

Lord Holt, in *Lane v. Cotton*, 12 Mod., 488, said that for neglect in an agent there is no remedy against him, because his neglect is only chargeable on his master or principal. But for a misfeasance, an action will lie against a servant or deputy, but not as a servant or deputy, but as a wrong-doer.

The decisions of this Court announce the same rule.

*Erwin v. Davenport*, 9 Heis[K]., 45; *Elmore v. Brooks*, 6 Heis[K]., 48; *Deaderick v. Bank*, 16 Pick. 458–461. The authorities cited from other States, which apparently announce a contrary rule, are not in accord with our decisions. *Id.* at 268–270, 67 S.W. at 470–471.

In *Jones v. First State Bank*, 158 Tenn. 356, 13 S.W.2d 326, 327 (1929), the court assists us by indicating and delineating the types of conduct engaged in by directors which might give rise to a creditor's suit based on misfeasance or malfeasance:

In *Wallace v. Lincoln Savings Bank*, 89 Tenn. 659, 15 S.W. 448, it was said:

"A director in a suit between himself and the corporation, or those suing upon the corporate right of action, is not presumed to have knowledge of all that is shown by the books of the company."

As a practical proposition, it would be impossible for a director to keep informed as to the great number of entries on the books of a modern bank. In this cause it is not shown that these directors were inactive, did not attend the meetings of directors, select competent officials, exercise general supervision over the activities of the bank, or that they turned over the management of the bank to the exclusive control of the cashier. In other words, that they were guilty of such malfeasance, misfeasance or negligence in office as to make them amenable to the corporation for losses sustained by the bank.

The duties and liabilities of such directors are pointed out with particularity in *Wallace v. Lincoln Savings Bank, supra*. It is unnecessary to pursue this

matter further since this is not a suit between the directors and the corporation, or those suing upon the corporate right of action, but this is a suit by creditors against the directors of the bank, and is controlled by the principles announced in *Minton v. Stahlman*, 96 Tenn., 102, 36 S.W. 222, in which this court said:

(1) "As said by this Court in *Hume v. Bank*, 9 Lea, 728, 'a director is the agent of the corporation, and, ordinarily, is only liable to the corporation. If he becomes liable directly to a creditor, it must be by statute or by some conduct which creates a privity of contract between them, or which results in a tortious injury to the creditor for which an action ex delicto will lie.'

"Says Mr. Thompson in his Commentaries on Private Corporations, Vol. 111, Sec. 4137: 'The fact that directors and officers of a corporation have mismanaged its business does not render them liable to creditors unless they are made liable by the provisions of the articles of incorporation or by statute. The proposition is that a wrong to the corporation which may and does affect the credit of the company and the creditors generally is not a wrong to them as individuals, and they cannot maintain an action against the directors as for a tort.'" *Id.* at 359–360, 13 S.W.2d at 327.

And:

But assuming that an ordinarily prudent person would have made investigation as to such matters, the failure of the directors to do so can, in the circumstances of this cause, be nothing more than negligence, which would not make them liable to complainants. *Id.* at 363, 13 S.W.2d at 328.

■ In the facts at bar, it is evident that the creditors of the corporation are not proper parties to personally sue the directors of the corporation on the ground that the latter have failed to properly manage the corporate affairs.

■ The authorities are clear. A director of a corporation is the agent of the corporation and as a general rule he is only liable to the corporation. As stated in *Hume, supra*, to become directly liable to a creditor, a statutory duty must devolve upon the director or there must be some conduct which creates privity of contract between them or which results in tortious injury to the creditor for which an action ex delicto will lie.

Plaintiffs have instigated suit on their own behalf, not on behalf of the corporation or the stockholders. They merely seek to recover damages incurred by their loan losses as a result of PPC's insolvency. They have pleaded no applicable statutory duty, privity of contract or independent tortious injury upon which they are entitled to a cause of action against the directors personally for corporate mismanagement.

As a statutory basis for creating privity between the parties at bar, plaintiffs rely on T.C.A. § 48–813 (1979):

48–813. Duty of directors and officers. —Directors and officers shall discharge the duties of their respective positions in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions. In discharging their duties, directors and officers, when acting in good faith, may rely upon financial statements of the corporation represented to them to be correct by the president or the officers of the corporation having charge of its books of account, or stated in a written report by an independent public or certified public accountant or firm of such accountants represented to them fairly to reflect the financial condition of such corporation.

■ This "duty of directors and officers" is a duty that runs to the corporation, in favor of the corporation and its stockholders. T.C.A. § 48–813 is not intended to establish a statutory privity between directors and officers and third parties not representing the corporate entity. T.C.A. § 48–407 (1979), concerning the "Indemnification of officers and directors for expenditures as parties to suits by or in right of corporation—Exceptions", allows for in-

demnification of directors under certain circumstances, "except in relation to matters as to which such director or officer is adjudged to have breached his duty to the corporation under § 48–813."

The legislature, having thus limited T.C.A. § 48–813 to a director's duty to the corporation, has not expanded that duty to include third party creditors elsewhere in the Tennessee General Corporation Act, T.C.A. §§ 48–101–1404 (1979).

We resolve the first issue against the plaintiffs.

## II. PLAINTIFFS' CAUSE OF ACTION BASED ON NEGLIGENT MISREPRESENTATION

*Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228 (Tenn.App.1976), contains a discussion of the law of negligent misrepresentation as it applies in Tennessee:

When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. *Rose v. Foutch*, 4 Tenn.App. 495 (1926). The representation must have been made with knowledge of its falsity and with a fraudulent intent. *Shwab v. Walters*, 147 Tenn. 638, 251 S.W. 42 (1922); *Vela v. Beard*, 59 Tenn.App. 544, 442 S.W.2d 644 (1968). The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that representation to his injury. *Whitson v. Gray*, 40 Tenn. 441 (1859); *Dozier v. Hawthorne Development Co.*, 37 Tenn.App. 279, 262 S.W.2d 705 (1953).

In commercial transactions the law has recognized a less stringent standard of liability for fraudulent misrepresentations than the common law action for deceit. One who, in the course of his business, profession, or employment, or during a transaction in which he had a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Jasper Aviation, Inc. v. McCollum Aviation, Inc.*, 497 S.W.2d 240 (Tenn.1972); *Hunt v. Walker*, 483 S.W.2d 732 (Tenn.App.1971). This standard of liability substitutes a reasonable care standard for the common law scienter requirement. In other words, in business transactions, a defendant can be held liable for negligent misrepresentations. *Id.* at 232.

Tennessee has adopted the Restatement (Second) of Torts § 552 (Tent. Draft No. 11, 1965) relating to negligent misrepresentation. *See Jasper Aviation, Inc. v. McCollum Aviation, Inc.*, 497 S.W.2d 240 (Tenn.1972) wherein it states:

The second theory is found in American Law Institute, Restatement of Torts 2d, § 552, Tent.Draft No. 11, April 15, 1965. There it is said:

"(1) One, who in the course of his business, profession or employment, or a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) The liability stated in subsection (1) is limited to loss suffered

(a) by the person or one of the persons for whose benefit and guidance he knows the information to be intended; and

(b) through reliance upon it in a transaction in which it is intended to influence his conduct."

The liability is, however, subject to the defenses of "contributory fault, adequate disclaimers, or other defenses." *Tartera v. Palumbo*, 224 Tenn. 262, 453 S.W.2d 780 (1970). *Id.* at 242–243.

To establish the personal liability of the directors to the creditors, the plaintiffs

must establish by a preponderance of the proof that:

1. the director(s) supplied information to the plaintiffs;

2. which was false;

3. the director(s) did not exercise reasonable care in obtaining or communicating the information; and,

4. the plaintiffs justifiably relied on the information.

It is the plaintiffs' position that the negligent misrepresentations were in (1) the warranties contained in the April 17, 1974 offer to purchase PPLIC from PPC, accepted by PPC subject to board approval which was granted on April 19, 1974 and (2) the December 31, 1973 Consolidated Financial Report of PPC.

By the terms of the April 17, 1974 letter itself, drafted and signed by Mr. Merriman, the warranties are all made by PPC: "Peoples Protective Corporation warrants . . . ." precedes each warranty called for in the letter. Plaintiffs have neither directed our attention to, nor can we find in the record in these causes, any warranties made expressly by the directors of PPC in their personal capacity. As discussed in section I of this opinion, a director owes his duty of due care to the corporation. The warranties were those of the corporation as an entity and as such were not representations made by the directors.

Defendants concede that a corporate director may be individually and personally liable to a third party to whom he furnishes a false corporate financial statement where such person suffers damages in reliance thereon.

It is defendants' contention that the statement was furnished to plaintiffs by PPC's treasurer, Mr. Mansfield, who was not a director of PPC and thus the directors did not furnish plaintiffs the information claimed to be relied upon. Further, defendants contend that there is no proof that the information in the statement is false. Additionally, defendants contend that there is no proof in the record that plaintiffs relied on any information received from defendants.

We have reviewed the lengthy records and bill of exceptions in these matters. We did so in light of T.C.A. § 27–303 (Supp. 1978) which directs that our review is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the judgment or decree of the trial court, unless the preponderance of the evidence is otherwise. *See generally Bevins v. George*, 36 Tenn.App. 308, 255 S.W.2d 409 (1952).

We find that plaintiffs have failed to rebut the presumption of correctness of the Chancellor's findings that defendants did not supply any false or misleading information to plaintiffs and that plaintiffs did not rely upon information received from any of the defendants.

This failure to rebut the T.C.A. § 27–303 (Supp.1978) presumption of correctness effectively forecloses any possibility of plaintiffs prevailing over the defendant directors in this cause.

The record reveals that Mr. Joe Jack Merriman, well experienced in purchasing insurance companies in financial distress, did not enter into this transaction on the merits of the consolidated financial statement alone. Mr. Merriman is knowledgeable in this particular area. He was accompanied and advised by Mr. Fickes, his advisor in these matters, an actuarial consultant. There is no indication in the record that Mr. Merriman was refused access to any information he sought concerning this purchase and sale. The parties had direct dealings with the Tennessee State Department of Banking and Insurance, Mr. Merriman being aware that the department was concerned about the status of the companies.

Mr. Merriman testified that Mr. Goodrich, a board member and general counsel for PPC in this matter, acting a go-between, "was then and at all times trying to convey to us as much information as accurately and carefully as he could. He was conscientious in trying to be specific and accurate on that date and every time that I was with him."

The record reveals that Mr. Merriman had considerable information in his possession or at his disposal for the asking from many sources on which he did or could have based his decision concerning the purchase. We concur with the Chancellor's holding that plaintiffs did not rely upon the information available in the consolidated financial statement and further find that had the plaintiffs so relied, the mere use of the consolidated financial statement, given the information available to Mr. Merriman, was not the proximate cause of plaintiffs' injury.

We resolve issue two against the plaintiffs.

## B. ASSIGNMENTS OF ERROR RELATING TO EXCLUSION OF EVIDENCE

The trial of the issues in this suit involved much discussion between counsel and the court as to the theories of plaintiffs' causes of action.

In the initial stages of the trial, the following colloquy transpired between plaintiffs' counsel and the court:

THE COURT: State to me what you consider it [the issue] to be.

MR. RICE: Yes sir. I consider it to be in this catagory; that it is negligent misrepresentation, and I state that that is of such a degree that it is gross and wanton, that it bears the badge of constructive fraud.

Subsequently, plaintiffs' counsel asserted:

MR. RICE: The issues before the court are negligent misrepresentation and constructive fraud.

In thus delineating the issues in open court, plaintiffs abandoned any cause of action supported by their pleadings save that of negligent misrepresentation and constructive fraud. *See generally* 71 C.J.S. *Pleading* § 420 (1951).

In conformance with the issues as established by the pleadings and admissions at trial, the trial court is empowered to rule on the admissibility of evidence based on its probative value in relation to the issues

being tried. Matters offered in evidence must be relevant to the issues. Evidence which is neither relevant nor material to the issues delineated at trial is properly excludable by the trial court. *See generally* 29 Am.Jur.2d *Evidence* § 251 (1967).

Plaintiffs' assignments of error numbers 1, 2, 3, 6, 7, 9, 10, 11, 12, 14, 16, 17, 18, 20, 21, 23, 24, 25, 26a, c, d, f, g, h, i, j, 27A, B, C, 29 and 30, as they relate to the directors, are overruled.

## C. ASSIGNMENTS OF ERROR DIRECTED TO THE TRIAL COURT'S HOLDINGS IN REGARDS TO PLAINTIFFS' ACTIONS AGAINST DEFENDANTS FROM ARNOLD & BADGETT

In substance, plaintiffs raise two issues that affect the outcome of these defendants' liability:

1. Did the plaintiffs fail to prove that the consolidated financial statement was false; and,

2. Did the plaintiffs rely on the consolidated financial statement?

The resolution of either of these issues against plaintiffs would preclude their recovery against these defendants.

We have resolved these issues against plaintiffs in the course of our discussion under heading A. 2. Plaintiffs have raised no arguments which would warrant a further discussion of these issues.

Plaintiffs' assignments of error numbers 4, 5, 8, 10, 11, 12, 14, 15, 16, 19, 22, 23, 26b, c, e, h, i, 28 and 30, as they relate to non-director defendants are overruled.

## D. DID THE TRIAL COURT ERR IN REFUSING TO ALLOW PLAINTIFFS TO AMEND THEIR COMPLAINTS?

Plaintiffs concluded their case in chief on September 26, 1977, approximately three years after filing their complaints. At that time, all the defendants made motions for what would be in effect an involuntary dismissal of the complaints. The plaintiffs

were given thirty days within which to file a written response in opposition to the motions. After being granted an extension of time, plaintiffs filed their brief on November 18, 1977, accompanied by a Motion to Amend their Complaints.

In *Branch v. Warren*, 527 S.W.2d 89 (Tenn.1975), our Supreme Court discussed the Tennessee Rules of Civil Procedure, Rule 15.01, Amendments:

 Plaintiffs, as Appellants in this Court, assign as error the action of the trial judge in overruling their motions to amend. We regard this as error. The policy of our law has long favored amendments. Section 198, *Caruthers' History of a Lawsuit*, Eighth Edition (1963) reads, in pertinent part as follows:

Under the very liberal rules allowing amendments, the court may admit material amendments at any stage of the proceedings. The Supreme Court of Tennessee has said: "It is a downright violation of principles, and of good sense, to determine any case otherwise than on its merits, and it is a great imputation upon judges that so many statutes of jeofails have been needful to place common sense upon her native seat, from which she has been driven by technicalities."

 The new Rules of Civil Procedure, in this regard "come not to destroy the old law, but to fulfill." They were designed to simplify and ease the burden of procedure under the sometimes harsh and technical rules of common law pleading. Accordingly, Rule 15.01 provides that leave (to amend) shall be freely given when justice so requires. This proviso in the rules substantially lessens the exercise of pre-trial discretion on the part of a trial judge. Indeed, the statute (§ 20–1505, T.C.A.) which conferred a measure of discretion on trial judges was repealed and Rule 15 stands in its place and stead. That rule needs no construction; it means precisely what it says, that "leave shall be freely given." *Id.* at 91–92.

We note that *Branch* involves a pre-trial amendment and lessens the exercise of *pre-trial* discretion on the part of a trial judge.

*Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479 (6th Cir. 1973), although it discusses the Federal Rules of Civil Procedure, Rule 15, sets out some of the broad and legitimate factors a trial judge should weigh in considering a Motion to Amend: Undue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.

Plaintiffs' amendment would primarily allege the stockholder status of certain directors and their personal interest in salvaging their financial interests to be the motivating factor in their conduct alleged in the complaints.

We note that plaintiffs amended their complaints prior to trial. Further, given the complexity of the suit, the thoroughness of the pleadings, discovery, the three year delay between filing and trial and the complex clarification of the issues during trial, the granting of an amendment would result in great prejudice to the defendants.

It is clear that had plaintiffs been given the opportunity to amend, it would have been a futile gesture. The record reveals that plaintiffs failed to establish by a preponderance of the evidence that defendants supplied any false or misleading information to plaintiffs or that plaintiffs relied upon information received from any of the defendants. Therefore, it is evident that plaintiffs could not have recovered under any of the allegations in the proposed amendments.

 The granting or denying of a motion to amend is within the sound discretion of the trial court and will be reversed only for an abuse of discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Plaintiffs have failed to show this Court where the Chancellor abused his discretion in denying the motion to amend.

Plaintiffs' assignments of error 13 and 24 are overruled.

## E. DID THE TRIAL COURT ERR IN DISMISSING PLAINTIFFS' ACTION AT THE CLOSE OF PLAINTIFFS' PROOF WHEN THE TRIAL COURT HAD OVERRULED DEFENDANTS' MOTIONS TO DISMISS PRIOR TO TRIAL?

Pursuant to Tennessee Rules of Civil Procedure, Rule 12.02, defendants, prior to trial, moved the court to dismiss plaintiffs' complaints for failure to state a claim upon which relief can be granted.

In *Holloway v. Putnam County*, 534 S.W.2d 292 (Tenn.1976), the court had this to say concerning Rule 12.02(6):

> ██ A motion under Rule 12.02(6) Tenn.R.Civ.P., is akin to a demurrer under former practice in that it admits all matters properly pleaded, and, therefore, is a test of the leading pleading. *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn. 1975). *Id.* at 296.

Further:

> In the face of a Rule 12.02(6) motion, it is the duty of the Court to construe the complaint liberally in favor of the plaintiff. *Huckeby v. Spangler*, 521 S.W.2d 568 (Tenn.1975). *Id.*

A Rule 12.02 motion serves a distinctly different purpose than that authorized by a Rule 41.02 motion:

> (2) After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence; in the event judgment is rendered at the close of plaintiff's evidence, the court shall make findings of fact if requested in writing within three days after the announcement of the court's decision.

 The former tests the sufficiency of the complaint(s). The latter evaluates the strength of the plaintiffs' case:

> But in the non-jury case, when a motion to dismiss is made at the close of plaintiff's case under Rule 41.02(2), the trial judge must impartially weigh and evaluate the evidence in the same manner as though he were making findings of fact at the conclusion of all of the evidence for both parties, determine the facts of the case, apply the law to those facts, and, if the plaintiff's case has not been made out by a preponderance of the evidence, a judgment may be rendered against the plaintiff on the merits, or, the trial judge, in his discretion, may decline to render judgment until the close of all the evidence. The action should be dismissed if on the facts found and the applicable law the plaintiff has shown no right to relief. *City of Columbia v. C. F. W. Construction Co.*, 557 S.W.2d 734, 740 (Tenn.1977).

We can find no error in the Chancellor's actions in regards to assignments of error 11 and 12 and they are accordingly overruled.

It results that all of plaintiffs' assignments of error are overruled and the Judgment of the Chancellor is affirmed. Costs are taxed to plaintiffs.

NEARN and EWELL, JJ., concur.