# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 8, 2007 Session

## CHRISTINA ALTICE v. NATS, INC. ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 04-678-I (III)     Ellen Hobbs Lyle, Chancellor**

---

**No. M2007-00212-COA-R3-CV - Filed April 15, 2008**

---

Plaintiff sued defendants to collect a judgment against a defunct nonprofit corporation, claiming defendants were the alter egos of the defunct corporation. The trial court declined to add a fourth defendant and granted summary judgment against the plaintiff. Plaintiff appeals both decisions of the trial court. We affirm in part and reverse in part the grant of summary judgment and reverse the decision not to add the fourth defendant.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and DONALD HARRIS, SR.J., joined.

Stephen E. Grauberger, Nashville, Tennessee, for the appellant, Christina Altice.

Stanley A. Kweller, Nashville, Tennessee, for the appellees, NATS, Inc., Mary Friddell, and Estate of Rosa Mary Humphreys.

## OPINION

The genesis of this matter lies in a prior federal lawsuit. A recitation of the facts of that litigation is necessary to gain a full understanding of the current case. In 1998, Christina Altice, a former student, sued Nursing Assistant Training Specialists, Inc., a not-for-profit corporation, in the United States District Court for Middle Tennessee.[1] In late March 1999, Altice filed a motion to compel Nursing Assistant Training Specialists, Inc. to respond to discovery. No response to this motion was filed. On March 31, 1999, Nursing Assistant Training Specialists, Inc. executed an

---

[1]*Christina Altice v. Nursing Assistant Training Specialists, Inc.*, No. 3-98-1014 (M.D. Tenn.).

agreement with NATS, Inc. ("NATS") to sell its assets to NATS for $7,295.00.[2] The District Court subsequently ordered Nursing Assistant Training Specialists, Inc. to respond to Altice's discovery requests. This did not occur, so the court entered a default judgment against Nursing Assistant Training Specialists, Inc. on May 20, 1999. In the meantime, on April 21, 1999, NATS filed a charter with the Tennessee Secretary of State as a for-profit corporation. Nursing Assistant Training Specialists, Inc. was administratively dissolved in January 2000. After an unexplained delay of almost four years, the District Court entered a judgment awarding Altice $102,820.00 against Nursing Assistant Training Specialists, Inc. on February 18, 2003. This judgment was domesticated by order of the Davidson County Chancery Court on February 17, 2004.[3]

The lawsuit before this court was filed against NATS on March 5, 2004. It alleges that NATS is an alter ego of Nursing Assistant Training Specialists, Inc. and was formed to fraudulently receive the assets of Nursing Assistant Training Specialists, Inc. in order to defeat creditors. The suit seeks to hold NATS responsible for the judgment against Nursing Assistant Training Specialists, Inc. In May 2004, the Chancellor allowed the complaint to be amended to add Mary Friddell and the Estate of Rosa Mary Humphreys as defendants. They were alleged to be alter egos of both Nursing Assistant Training Specialists, Inc. and NATS. A request to add Charles Friddell[4] as a defendant was denied. A second request to add Charles Friddell as a defendant was denied on July 22, 2004. In September 2006, Altice renewed her motion to add Charles Friddell as a defendant, but that motion was apparently never ruled on due to the granting of summary judgment in favor of the defendants. In granting the motion for summary judgment, the Chancellor determined that there were no genuine issues of material fact and "no indications of badges of fraud, deception, or malice by these Defendants that would give rise to the Court piercing the corporate veil." Furthermore, the court specifically found that "there is no evidence to create a genuine issue of material fact as to whether or not these Defendants were the alter ego of Nursing Assistant Training Specialists, Inc. or that they undertook any actions to harm or defraud the creditors of the same."

---

[2]The assets consisted of desks, chairs, some training materials, supplies and an existing lease. The agreement was signed by Mary Carol Friddell as President of Nursing Assistant Training Specialists, Inc. and Rosa Mary Humphreys as President of NATS. Ms. Humphreys supplied the funds for the purchase. Ms. Humphreys was the original shareholder of NATS. She was the President, sole shareholder and sole member of the Board of Directors of NATS from 1999 until 2003, when she transferred her shares to her daughter, Ms. Friddell. Ms. Friddell held the position of Secretary of NATS from 1999 until 2002. She is currently President, sole shareholder and sole member of the Board of Directors of NATS.

There appears to be some confusion about the roles played by Ms. Friddell and Ms. Humphreys in Nursing Assistant Training Specialists, Inc. The First Amended Complaint alleges, and the defendants' answer filed in June 2004 admits, that Mary C. Friddell held the position of President during the entire existence of the corporation and Ms. Humphreys held the position of Secretary in 1998. Yet in 2006 Ms. Friddell testified in her deposition that she held the title of Secretary and she "guessed" her mother, Ms. Humphreys, was President. Charles Friddell testified that Mary Friddell was President and Ms. Humphreys was the Secretary to the board.

[3]*See Christina Altice v. Nursing Assistant Training Specialists, Inc.*, No. 03-3631-III (Davidson County Chancery Court 2004).

[4]Charles Friddell is the husband of Mary Friddell. He served as attorney for both Nursing Assistant Training Specialists, Inc. and NATS.

-2-

In its order denying the Motion to Alter or Amend, the court made further findings. The court concluded that "the Plaintiff can not show a material breach of fiduciary duty by the Defendants and that there was no zone of insolvency caused by any of the acts of the Defendants in this cause." It further found that the defendants justified their transactions with the corporation and that the actions of the defendants regarding the making and repaying of loans were justified and conducted in good faith. Finally, the court found that any contradictions in the defendants' testimony were not material.

## Standard of Review

The purpose of summary judgment is not to find facts or resolve disputed facts, but rather to resolve controlling issues of law. *Sherlin v. Hall*, 237 S.W.3d 647, 649 (Tenn. Ct. App. 2007). Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. In reviewing the record, the appellate court must view all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Sherlin,* 237 S.W.3d at 649. When examining a grant of summary judgment, this court reviews "the record without a presumption of correctness to determine whether the absence of genuine issues of material facts entitle[s] the defendant to judgment as a matter of law." *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn. 1997)*; see also Burnette v. Estate of Guider*, No. E2006-01164-COA-R3-CV, 2007 WL 4548292, *1 (Tenn. Ct. App. Dec. 27, 2007).

## Piercing the Corporate Veil

"A corporation is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors." *Oceanics Schools, Inc. v. Barbour,* 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003). A corporation's separate identity, however, may be ignored or "pierced" when that separate identity is shown to be a sham or dummy or where necessary to accomplish justice. *Id.* A "suit against an alter ego in which the plaintiff seeks to pierce the corporate veil in connection with a previously-obtained judgment against a corporation is not a 'separate and independent cause of action.'" *Id.* at 145 (quoting *Matthews Constr. Co. Inc. v. Rosen*, 796 S.W.2d 692, 693 n.1 (Tex. 1990)). Thus, when Christina Altice obtained and domesticated the judgment against Nursing Assistant Training Specialists, Inc., she also did so as to any alter egos of Nursing Assistant Training Specialists, Inc. *Id. at* 145.

In the instant matter, Altice is attempting to show that NATS is the alter ego of Nursing Assistant Training Specialists, Inc., and that Mary Friddell and/or Rosa Mary Humphreys are alter egos of both Nursing Assistant Training Specialists, Inc. and NATS. When examining whether to pierce a corporate veil, this court has relied on the factors listed in *Fed. Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386 (E.D. Tenn. 1984):

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the

nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Id*. at 397 (citations omitted); *see Oceanics Schools*, 112 S.W.3d at 140. Each of these factors needs not be present to justify piercing the corporate veil. *Oceanics Schools*, 112 S.W.3d at 140. In order to determine whether there are genuine issues of material fact, we must examine the proof regarding the factors alleged to exist.

Altice claims that Nursing Assistant Training Specialists, Inc. was grossly undercapitalized.[5] Mary Carol Friddell stated in her affidavit that, "[d]uring the course of the existence of Nursing Assistant Training Specialists, Inc. the company was severely cash strapped." Ms. Friddell further stated that she borrowed money and loaned it to the company.

Nursing Assistant Training Specialists, Inc. was a non-profit corporation, so it did not have or issue corporate stock. NATS stock was owned solely by Rosa Mary Humphreys and later by Mary Friddell, her daughter.

NATS operated out of the same office or business location as Nursing Assistant Training Specialists, Inc., at least initially. Pursuant to the March 31, 1999 sale agreement, Nursing Assistant Training Specialists, Inc. assigned the lease for its facilities to NATS. NATS, however, did not finish out the lease because the building operators wanted NATS to leave.[6]

NATS retained the employees of Nursing Assistant Training Specialists, Inc. Both entities were represented by attorney Charles Friddell, Jr.[7] Mr. Friddell's group employee insurance plan covers NATS employees . Mr. Friddell's office handles the bookkeeping for NATS and does some

---

[5]Undercapitalization occurs when a company does not having enough capital to carry on its business. *Black's Law Dictionary* 223 (8th ed. 2004). The term "capital" refers to the money or assets of a business. *Id*. at 221.

[6]According to Mr. Friddell, the building operators wanted NATS out because, "some of the people who come to the school are not ... they don't appear to be the greatest people in the world."

[7]In his deposition on December 18, 2003, Mr. Friddell testified that Nursing Assistant Training Specialists, Inc. was originally a for-profit corporation which he acquired on behalf of a not-for-profit corporation by the same name. It was hoped that, as a non-profit, Nursing Assistant Training Specialists, Inc. could capitalize on grants or contracts with the state or federal governments regarding the Families First Program. It never, however, received any such grants or contracts.

secretarial work for the corporation. Invoices to the attention of NATS are mailed to his office.

Altice maintains that the corporate assets of Nursing Assistant Training Specialists, Inc. were diverted to the use of the Friddells. In her deposition, Mary Friddell testified that she never received any compensation from Nursing Assistant Training Specialists, Inc., that she never made any loans to Nursing Assistant Training Specialists, Inc., and that she had purchased equipment and supplies and been reimbursed for about $500.00. Later, when faced with over $76,000.00 worth of checks made out to her from Nursing Assistant Training Specialists, Inc., Mary Friddell filed an affidavit stating that, with the exception of three checks reimbursing her for expenses, the checks were payments to her reimbursing her "for loan repayments." Similarly, Charles Friddell testified in his 2006 deposition that he made a $10,000.00 loan to Nursing Assistant Training Specialists, Inc. which was repaid to him by Tommy Eaves, who then became the creditor of Nursing Assistant Training Specialists, Inc. Mr. Friddell then testified he made no other "sizable" loans. Yet, when addressing the existence of $26,601.11 in checks written to him by Nursing Assistant Training Specialists, Inc., Mr. Friddell stated in an affidavit that some "were for purposes of loan repayments." He explained that "[d]uring 1995 and 1996, I assisted the company with operating capital and to help it make payroll and/or payroll taxes."[8] These checks and statements relate to several *Allen* factors – gross undercapitalization, the failure to maintain arms length relationships among related entities, and the general concern that the entity was used to work a fraud or injustice.

The Chancellor found that there were no genuine issues of material fact and "no indications of badges of fraud, deception, or malice by these Defendants that would give rise to the Court piercing the corporate veil." Furthermore, she specifically found that "there is no evidence to create a genuine issue of material fact as to whether or not these Defendants were the alter ego of Nursing Assistant Training Specialists, Inc. or that they undertook any actions to harm or defraud the creditors of the same," and that the actions of the Defendants in making and repaying loans were justified and conducted in good faith. Finally, the Court found that any contradictions in the Defendants' testimony were not material.

Much of the evidence in this case is uncontroverted. We cannot, however, agree with the Chancellor that there are no genuine issues of material fact or that the contradictions in testimony of the Friddells were not material. As this case has developed, the central matter of controversy relates to the so-called loans for which Charles and Mary Friddell were reimbursed. If the transactions were indeed loans, then it would appear that there was no fraud perpetrated on Altice, no diversion of corporate assets, and no material failures to maintain arms length relationships. If these transactions were not loans, however, then the payments take on an entirely different and more nefarious character which would likely influence a court's evaluation of the *Allen* factors in favor

---

[8]No loan documents or corporate records were placed in evidence to support either Mary Friddell's or Charles Friddell's contentions that these were loan repayments.

of piercing the corporate veil.[9] We, therefore, reverse the Chancellor's grant of summary judgment as to Mary Friddell. The material facts at issue do not involve NATS or the Estate of Rosa Mary Humphreys, and we agree that summary judgment is appropriate as to these parties.

### Addition of Charles Friddell as a Party

During the course of this litigation, the trial court twice denied motions by Altice to add Charles Friddell as a defendant without stating the reason for its ruling. It appears that a renewed motion to add Mr. Friddell was never acted on. The trial court's decision to deny a motion to amend a complaint is reviewed under an abuse of discretion standard. *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979). Our Supreme Court has summarized the abuse of discretion standard of review as follows:

> A trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "appl[ies] an incorrect legal standard, or reach[es] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)(citations omitted). This discretion is somewhat constrained by Tenn. R. Civ. P. 15(a), which states that leave of the court to amend a pleading "shall be freely given when justice so requires." Some of the factors to be considered by the court in determining whether to grant a motion to amend include: "[u]ndue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Merriman*, 599 S.W.2d at 559 (citing *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479 (6th Cir. 1973)).

Initially, in April 2004, Altice tried to add Mr. Friddell as an alter ego of both Nursing Assistant Training Specialists, Inc. and NATS, noting that he was the registered agent for both corporations and that his office address was the same as NATS. The defendants' reply did not raise any of the *Merriman* factors mentioned above. Rather, they maintained that neither the complaint nor the proposed amended complaint alleged any actions by Mr. Friddell which would have prejudiced Altice or imposed liability on him. The court refused to add Mr. Friddell as a defendant without explanation.

Altice made a second attempt to add Mr. Friddell as a defendant in July 2004, alleging that he did not act at arm's length in his dealings with either corporation and that he either participated

---

[9]The Chancellor's finding that the actions of the defendants regarding the making and repaying of loans were justified and conducted in good faith goes beyond the bounds of summary judgment. "Issues of witness credibility present issues of fact and must be construed in favor of a nonmoving party when considering a motion for summary judgment." *Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ.*, No. M2004-02224-SC-R11-CV, 2007 WL 4442736, *15 (Tenn. Dec. 20, 2007) (citing *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993)).

in or designed the means by which Nursing Assistant Training Specialists, Inc. fraudulently avoided liability to her. The defendants' opposition focused on Mr. Friddell's role as the agent of both corporations, citing Tennessee agency principles holding that an agent dealing for a disclosed principle acting within the scope of his powers is not personally liable to third parties. They further added that Mr. Friddell's status as husband of one defendant, son-in-law of another, and attorney of the defendant corporation did not create any liability on his part. Again, without explanation, the court refused to add Mr. Friddell as a defendant.

Finally, in September 2006, Altice renewed her motion to add Mr. Friddell as a defendant, stating that "[n]ew information obtained through the discovery process makes Charles Friddell a proper party to this action." The record does not indicate what the new information was. The defendants' reply simply relies on the chilling effect the addition of Mr. Friddell as a party would have on attorneys who represent corporations and on the lack of evidence giving rise to a claim against him. This motion was apparently never ruled on due to the granting of summary judgment in favor of the defendants.

In her appellate brief, Altice maintains that the trial court should have allowed her to add Mr. Friddell as a defendant. This contention is based on Mr. Friddell's intimate involvement[10] with Nursing Assistant Training Specialists, Inc., particularly his receipt of thousands of dollars paid to him by Nursing Assistant Training Specialists, Inc. and his contradictory testimony about the reasons for these payments. The defendants did not address the amendment issue in their appellate brief.[11]

The defendants filed the motion for summary judgment August 23, 2006. Altice filed her renewed motion to amend to add Mr. Friddell as a defendant on September 15, 2006, and her response to the summary judgment motion on September 25, 2006, which attached the many checks written to the Friddells from Nursing Assistant Training Specialists, Inc. We believe the contradictions between Mr. Friddell's deposition and his affidavit concerning the existence of loans to the not-for-profit corporation raise legitimate issues of fact about the purpose of the many checks written to him. If, as Altice claims, he improperly took money from Nursing Assistants Specialists Training, Inc., then those funds should have remained assets of the not-for-profit corporation which could be available to pay toward Altice's judgment. Thus, not permitting Altice to add Mr. Friddell as a defendant would be unreasonable and cause an injustice. Consequently, we find that Mr. Friddell should be added as a defendant.

## Conclusion

---

[10]This involvement has been detailed elsewhere in this opinion and need not be repeated here.

[11]Defendants' failure to address on appeal the issue of the trial court's refusal to add Mr. Friddell as a defendant probably justifies ruling against the defendants on this issue. Tenn. R. App. P. 27(a)(7) requires the appellant to include in the brief "[a]n argument . . . setting forth the contentions of the appellant *with respect to the issues presented*, and the reasons therefor, . . . with citations to the authorities and appropriate references to the record...." (Emphasis added). Rule 27(b) requires the same of the appellee. Since we have found appellant's argument persuasive, we do not rely on Rule 27.

The trial court's grant of summary judgment to NATS and to the Estate of Rosa Mary Humphreys is affirmed.  The trial court's grant of summary judgment to Mary Friddell is reversed.  The trial court's denial of the motion to add Charles Friddell as a defendant is reversed.  The case is remanded for proceedings consistent with this opinion.  One half of the costs of appeal are assessed against Christina Altice and one half the costs of appeal are assessed against Charles Friddell and Mary Friddell.


_____
_____ANDY D. BENNETT, JUDGE